262 A.2d 826.

STATE *vs.* THOMAS McCARTIN.

MARCH 9, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This indictment charges the defendant with unlawful possession and control of a central nervous system stimulant, a violation of G. L. 1956, (1968 Reenactment) §21-29-3(d). A Superior Court jury found the defendant guilty as charged. The trial justice denied the defendant's motion for a new trial. The cause is before us on the defendant's bill of exceptions.

At about 1:15 a.m. on June 9, 1967, in the City of Central Falls, Paul E. Olivier was operating a taxi owned by the Royal Cab Company when he received a radio message from his dispatcher to proceed to 58 Perry Street and pick up a passenger. When the cab driver arrived at the designated address, he drew up to the curb. Shortly thereafter, Olivier testified, defendant emerged from a dwelling house and entered the cab. Several people accompanied defendant as he made his way from the house to the cab. The driver noticed that defendant carried a tan corduroy jacket draped over his arm. Once defendant had entered the cab, the driver requested full payment of the fare before he would leave for his passenger's destination—Attleboro. The defendant placed the jacket on the back seat, examined all his pockets, and found that he did not have the $4 fare. He did, however, pay the driver a service charge of $1 and then left the cab.

Since this was the driver's last pickup of the night, he drove back to his employer's headquarters where he prepared the cab for the next day's activities. This preparation included filling up the gas tank, the completion of various records and an inspection of the passenger's section of the cab. The cab's back seat was examined to insure that any lost or misplaced property might be held by the cab company for its rightful owner. As Olivier was inspecting the cab's back seat, he observed the tan corduroy jacket which he had last seen in defendant's possession. A search of the jacket's pockets uncovered a package of cigarettes and a neatly folded cigarette package. The driver then unfolded

and opened up the cigarette package. When he did, he found it contained over a dozen varied colored capsules. The Central Falls police were summoned, and the coat and its contents were turned over to them. A chemical analysis of one of the capsules showed that it contained amphetamine, a central nervous system stimulant.

A state narcotics inspector testified that defendant, while being interrogated at the police station, admitted that he was the owner of the corduroy jacket. Testifying in his own behalf, defendant, in essence, confirmed most of the testimony given by the taxicab driver, but he emphatically denied that he owned the corduroy jacket or that he had had such a garment in his possession when he approached the cab in the very early morning hours of June 9, 1967. He conceded that he had been drinking heavily for some three hours before the cab arrived, and he also admitted that he was not really sure of what went on between the cab driver and himself at the curbside.

The defendant's first issue on appeal is directed toward certain testimony presented by the state, the introduction of which defendant contends was prejudicial error. The defendant had been picked up by the Central Falls police approximately one hour after they had been informed of the cab driver's discovery. The disputed testimony was presented by the officer in charge of the night platoon as he described defendant's physical appearance when he arrived at police headquarters. We have examined the record and note that most of the testimony complained of by defendant in his brief as being objectionable was, upon his motion, stricken from the record by the trial justice. The only portion of this officer's testimony allowed into evidence was his observation that defendant had "a wild stare" in his eyes and that when the officer spoke to defendant, he answered with "a foolish grin."

While the probative value of this type of testimony, hav-

ing in mind the charge in the instant indictment, is debatable, we fail to see how this description prejudiced defendant. Any prejudice that may have been accorded defendant by the introduction of this testimony was clearly neutralized by defendant's admitted earlier drinking bout. If the jury would gain any impression from defendant's wild stare and foolish grin, it is probable that they related these conditions to defendant's earlier overindulgence with alcohol. There is an abundance of evidence in the record linking defendant with the pills found in the corduroy jacket, and we therefore believe that the officer's description of defendant in no way influenced the jury's verdict.

The defendant argues that the trial court erred when he permitted the introduction into evidence of statements he made to the state narcotics inspector during an in-custody interrogation. The interrogation took place about 11 a.m., June 9, 1967—eight hours after defendant had been apprehended. The state offered evidence showing that defendant had been warned of his rights under the *Miranda* doctrine, that he freely waived these rights, and that he voluntarily acknowledged that he owned the corduroy jacket but not the capsules. The defendant concedes that he was advised of his *Miranda* rights prior to his being questioned, but he contends that he was incapable of giving an intelligent waiver of his rights against self-incrimination because of his physical condition at the time. As soon as evidence of defendant's admissions appeared on the record, the trial justice excused the jury and conducted a preliminary hearing as to the voluntariness of the statements allegedly made by defendant. The defendant's questioning of the narcotics inspector at this point was very suggestive that, at the time the inspector spoke with defendant, McCartin was under the influence of drugs. The inspector denied that this was so. The trial justice concluded at the end of the preliminary hearing that defendant had been accorded all four

*Miranda* warnings and all of defendant's police station statements were voluntarily made. We have scrutinized this portion of the record and find that the evidence warranted the trial court's finding that the statements given by defendant during his in-custody interrogation were voluntarily made at a time when he understood his rights. There is no competent evidence that defendant was under the influence of any drugs when he spoke to the state narcotics inspector.

The defendant has a criminal record. Section 9-17-15 provides that a witness's credibility may be impeached by showing his conviction or sentence for any crime or misdemeanor. Relying on this provision, the state confronted defendant in cross-examination with several instances where he had been convicted of violating the laws of this state and a neighboring jurisdiction. After the recital of a list of past convictions and defendant's acknowledgment thereof, the prosecutor then asked: "Is it an accurate conclusion, then, that the charges, the convictions I have read, total ten convictions?" The defendant's objection to this question was sustained, and he thereupon made a motion for a mistrial. The motion was denied. In pressing his exception to the denial of the mistrial motion, defendant claims that the prosecution's summary of his past misdeeds was made in an attempt to paint him in the jury's eyes as an habitual criminal. The defendant also points out that the prosecutor's addition was faulty. The defendant has, he says, nine not ten past convictions.

Although defendant's mathematics is correct, we do not believe that the state's mathematical inaccuracy was harmful to defendant. While we agree that the statute does not permit the state to totalize a defendant's convictions, on the state of the record before us one conviction more or less means absolutely nothing. In *Pedorella* v. *Hoffman*, 91 R. I. 487, 165 A.2d 721, we said that the use of testimony of

prior criminal convictions to impeach credibility is a matter addressed to the sound discretion of the trial justice. We can perceive no abuse of this discretion in the case at bar.

The defendant presses three exceptions he took to various evidentiary rulings made by the trial justice. He first contends that the trial judge erred in permitting the state to introduce the empty cigarette package and the capsules as a full exhibit. In making this contention, defendant points to the transcript and to the number of people it shows who handled the exhibit before it was finally delivered to the state's toxicologist for analysis. He further observes that, although the envelope and the capsules were kept under lock and key while they were undergoing analysis, two associates of the toxicologist also had keys and access to the laboratory's evidence locker. In essence, defendant contends that the state failed to prove that the exhibit was the one found in the corduroy jacket. There is no merit to this contention.

It is a rule of evidence in criminal proceedings that an object must be shown to be in substantially the same condition when offered as an exhibit as it was when the crime was committed. 2 Wharton, *Criminal Evidence* (12th ed.), §674. This rule, however, does not require the prosecution to exclude all possibility that a physical object offered as an exhibit may have been tampered with, rather that the trial court must be satisfied that in all reasonable probability no such tampering has occurred. *Carter* v. *State*, 84 Nev. 592, 446 P.2d 165; *United States* v. *S. B. Penick & Co.*, 136 F.2d 413. Continuity of possession is an effective guarantee, however, of the reliability of the proffered exhibit. Such continuity is more readily subject to verification than conceivably the usual identifying marks or labels found on an exhibit. *People* v. *Judkins,* 10 Ill.2d 445, 140 N.E.2d 663; see cases collected, 21 A.L.R.2d 1219. In the

instant case there was ample testimony by all the witnesses showing a continuous chain of custody and possession of the package and the capsules from the time the cab company employees made their discovery until the time of trial. The participating law-enforcement personnel and the toxicologist who analyzed the contents of one of the capsules traced in detail the identity, marking, custody, storage, and transportation of the exhibit. Beyond the innuendo cast by defendant that someone might have tampered with the capsules, there is absolutely nothing in this record that would suggest in the slightest that the questioned exhibit is anything but what the prosecution says it is. The trial court did not err in admitting the package and capsules into evidence.

The defendant's other evidentiary exceptions are to the sustaining of the state's objection to two questions he posed to two police officers during his cross-examination of them. One of these questions was clearly argumentative — the other was totally irrelevant. These two exceptions are overruled.

In his brief, defendant contends that the trial justice erred when in his charge he defined the words "possession" and "control" as they are used in §21-29-3(d). The defendant also claims that his motion for a directed verdict should have been granted. The defendant, in making these two contentions, has not provided us with any real argument or supporting authority on either of these two issues. Bald statements that a trial justice erred do not comply with this court's rule relative to the briefing and arguing of exceptions. We shall therefore deem each of these exceptions to have been waived. See *Devereaux* v. *Kelly*, 106 R. I. 499, 261 A.2d 843; *Clarke* v. *Sullivan*, 103 R. I. 177, 235 A.2d 668; *State* v. *Mandella*, 79 R. I. 476, 90 A.2d 423.

The defendant's last exception concerns the denial of his motion for a new trial. It is obvious that the jury be-

lieved the cab driver's testimony that the defendant had the corduroy jacket in his possession when he entered the cab and left it there when he found he did not have the fare to Attleboro. The trial justice approved this finding. It is the well-established rule that a trial justice's approval of a jury's verdict will not be disturbed by this court unless it is shown that his approval is clearly wrong or that in reviewing the record he has overlooked or misconceived relevant evidence on a controlling issue. The defendant's arguments in behalf of his motion for a new trial concern matters addressed more properly to the jury than to this court. We have examined with care the trial justice's refusal to grant the defendant a new trial. The court's action was not clearly wrong, nor did he overlook or misconceive any material evidence.

The defendant's exceptions which have been briefed and argued are overruled. All other exceptions are deemed to have been waived, and the case is remitted to the Superior Court.

*Herbert F. DeSimone*, Attorney General; *Donald P. Ryan*, Assistant Attorney General, of Counsel; *Luc R. LaBrosse*, Special Assistant Attorney General, for plaintiff.

*James Cardono*, Public Defender; *Moses Kando*, Assistant Public Defender, for defendant.