275 A.2d 915.

STATE *vs.* HAROLD SWANSON HINDLE.

APRIL 9, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J.  This is an indictment which charges a violation of G. L. 1956, §11-19-18[1].  The case was tried to a

---

[1]Since our disposition turns on a comparison of this section with sections 5 and 14 of chapter 19 of title 11 of G. L. 1956, we have incorporated for ready reference the three sections in question as appendixes A, B and C to this opinion.  We further note that sections 11-19-18, 14, and 5, are now cited as G. L. 1956 (1969 Reenactment), but because such reenactment was subsequent in time to the return of the instant indictment we shall refer to the appropriate sections as 11-19-18, 14 and 5.

Superior Court justice and a jury which returned a verdict of guilty as charged. It is before us on the defendant's bill of exceptions, which includes, *inter alia,* an exception to the denial of his motion to quash. Because of the view that we take of this exception, discussion of the other exceptions is unnecessary.

On March 3, 1967, several members of the Rhode Island State Police entered and searched defendant's home and garage, having first obtained a warrant therefore from the justice of the then Tenth District Court. In the course of their search, the officers found and seized racing sheets, so-called, written evidence of wagers or number pools, a radio and a telephone. The latter was seized because it rang repeatedly while the officers were present and when answered by one of them, the callers would give the names of horses, race track and the sum desired to be wagered. In defendant's garage the officers found and seized several hundred thousand lottery or policy slips.

Significantly, it is undisputed that defendant was alone in his home throughout the search and that there was no evidence, other than the telephone callers, of any other person gambling or offering to gamble on the premises.

In the Superior Court, defendant made several contentions, as he did before us, in connection with his motion to quash the indictment. Among these is the contention, in substance, that the total evidence adduced as a result of the search and seizure was legally incompetent to support the offense contemplated by the Legislature in its enactment of §11-19-18. This section, he contends, was enacted to make unlawful the keeping or maintaining of a room or place where gambling would be carried on by persons assembled in such room or place for that purpose. It was not intended by §11-19-18, he argues, that one conducting such bookmaking and number pool wagering operations, as the evidence in the instant case tended to prove, would

be guilty of the offense charged by said section. Rather, he argues, that such evidence, if accepted, would be applicable to §§11-19-14 and 5.

In rejecting this contention the Superior Court justice placed emphasis upon a consideration of the authority of the Legislature to make the conduct established by the evidence adduced against defendant a violation of §11-19-18, citing *State* v. *Kofines,* 33 R. I. 211, 80 A. 432. From a reading of his decision it seems clear that the rationale of the trial justice resulted from defendant's stressing the felonious aspects of §11-19-18 as contrasted with the misdemeanor aspects attributable to first offenders under §§11-19-14 and 5. So emphasize, the Superior Court justice correctly held that it was within the Legislature's police power to make the conduct with which defendant was charged a felony if in the judgment of the General Assembly public policy would be best served.

There can, of course, be no quarreling with the trial justice's rationale in this regard. However, it misconceives the real import of defendant's contention. He does not challenge the constitutionality of §11-19-18. Conceding that the General Assembly in its wisdom could have included the conduct evidenced by the search within the prohibition of §11-19-18, he argues that from the chronological history of the latter section and §§11-19-14 and 5, it is clear beyond a doubt that the conduct with which he is charged was either never an offense within the meaning of §11-19-18, or if it were, the Legislature subsequently provided otherwise.

This brings us then to a consideration of the legislative history and a comparison of the provisions of the three sections involved. Section 11-19-18 was originally enacted at least 37 years before §§11-19-14 and 5. What is §11-19-18, the offense for which defendant was indicted and tried, appears in section 5 of chapter 218 of title 30 of the revised

statutes of 1857. There would seem to be little doubt of its enactment at an even earlier date, but the date of its original enactment has not been brought to our attention by the parties, nor has our independent research proved more revealing.

Be that as it may, the offense as it appears in the revised statutes of 1857 is in no significant particular different from that set forth in §11-19-18.[2]

The original precursors of §§11-19-14 and 5 were first enacted by P. L. 1894, chap. 1280, sec. 1 and chap. 1316, sec. 1 respectively. A comparison of their provisions with those of §§11-19-14 and 5 discloses that as in the case of revised statutes 1857, title 30, chapter 218, section 5, vis-à-vis §11-19-18, there has been no amendment of significant materiality.

It is essential at this juncture to point out that the thrust of the state's case against the instant defendant is that he kept a room or place to be used for the purpose of gambling or for the purpose of keeping or exhibiting any devices, implements or apparatus whatsoever to be used in gambling.

In connection with this, the state points to the seizure of the racing forms and the evidence of telephone calls made by persons betting on horses, and the seizure of other written evidence of number pool operations as well as thousands of number policy slips found in the garage.

Since, following defendant's reasoning, the specific offense with which he is now charged by the state was in existence in 1857, the Legislature must have enacted the precursors to §§11-19-14 and 5 in 1894, for one of two reasons. These

---

[2]The provisions of the revised statutes of 1857, chap. 218, sec. 5, remained intact through the revisions of the General Laws of 1896, 1909, 1923, 1938. It was not until 1956 by the enactment of chapter 3759, section 9 of the Public Laws of that year that the statute was amended and then only to add "* * * any automobile, bus, coach, van, truck, trailer, railway or railroad car, or any other vehicle * * *" as places not to be kept or suffered to be kept for the purpose of gambling.

are either that the conduct which the state's evidence tends to prove was never considered by the General Assembly to be a violation of an existing law or that if it were, the Legislature intended to provide for a less harsh penalty for the conduct with which he is now charged.[3]

We think that there is merit in such reasoning. When §11-19-18 is read in this light, moreover, it lends persuasiveness to defendant's principal contention, namely that the "building, room, booth, shed" referred to in §11-19-18, contemplates a place designed for people to assemble for the purpose of gambling therein. Clearly, the instant defendant's premises were not put to such purpose and, in our judgment, the unlawful use that he is alleged to have made of them does not constitute a violation of the section under which he was indicted.

In reaching this conclusion we are not unmindful of prior decisions of this court cited by the state, most apposite among which is *State* v. *Picillo*, 105 R. I. 364, 252 A.2d 191. While it is true that in *Picillo*, defendant's conviction for a violation of §11-19-18 was upheld by this court on a showing of conduct very similar, if not identical to that attributed to the instant defendant, there was not raised

---

[3]Although set forth in the provisions of each section (see appendages A, B and C) it will be helpful at this juncture to note that the penalty for a violation of §11-19-18 is now and for at least 114 years has been "* * * not exceeding two (2) years or be fined not exceeding five thousand dollars ($5,000) nor less than five hundred dollars ($500)." Since their original enactment in 1894, some 77 years, the penalty for a violation of either §§11-19-14 or 11-19-5 has remained "* * * not exceeding five hundred dollars ($500) or imprisonment not exceeding one (1) year * * *."

Furthermore by P. L. 1941, chapter 983, section 1, the General Assembly definitively distinguished between offenses punishable by more than one year's imprisonment or a fine of more than $500 and offenses punishable by not more than one year or $500. The former were legislatively declared to be felonies, unless otherwise specifically provided, and the latter to be misdemeanors. Yet in the face of its legislative distinction, the General Assembly by the enactment of G. L. 1956, continued to state as separate offenses the conduct prohibited by §§11-19-5, 14 and 18.

for our consideration in *Picillo* the question of legislative intentment on which our decision here turns. Rather, Picillo sought to establish that §11-19-18, was constitutionally defective. Contrariwise, the instant defendant acknowledges that the conduct with which he is charged could have been made a violation of §11-19-18, the constitutionality of which he does not challenge but that in fact the Legislature saw fit to provide otherwise.

The defendant's exception to the denial of his motion to quash is sustained, and the case is remitted to the Superior Court for further proceedings.

## Appendix A

11-19-18. Keeping of gambling places or devices.—Acting as dealer, banker, or lookout.—Every person who shall keep or suffer to be kept any building, room, booth, shed, tent, arbor, or any other place, or any automobile, bus, coach, van, truck, trainer, railway or railroad car, or any other vehicle in any city or town of this state, or in any vessel, boat or raft upon any of the waters of Narragansett bay, to be used or occupied for the purpose of gambling, or playing at any game or games of chance of any kind whatsoever, for money or other valuable consideration, or shall keep, exhibit, or suffer to be kept or exhibited upon his premises or in his vehicle or under his control, any cards, dice, table, bowls, wheel of fortune, shuffleboard, or billiard table, or any device, implement or apparatus whatsoever to be used in gambling or playing at any game or games of chance for money or other valuable consideration, or who shall be guilty of dealing faro, or banking for others to deal faro, or acting as lookout, gamekeeper or assistant for the game of faro or any other banking game where money or property is dependent on the result, shall be taken and held to be a common gambler and shall be imprisoned not exceeding two (2) years or be fined not exceeding five thousand dollars ($5,000) nor less than five hundred dollars ($500).

## Appendix B

11-19-14. Bookmaking.—Except as provided in chapter 4 of title 41, any person who shall engage in pool selling or bookmaking, *or shall occupy or keep any room, shed, tenement, tent or building, or any part thereof, or shall occupy any place upon any public or private grounds within this state, with books, apparatus, or paraphernalia for the purpose of recording or registering bets or wagers or of buying or selling pools,* or who shall record or register bets or wagers or sell pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, or upon the result of any political nomination, appointment or election, or, being the owner or lessee or occupant of any room, tent, tenement, shed, booth or building or part thereof, knowingly shall permit the same to be used or occupied for any of these purposes, or therein shall keep, exhibit or employ any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, or shall become the custodian or depositary for gain, hire or reward of any money, property or thing of value staked, wagered or pledged or to be wagered or pledged upon any such result, or who shall receive, register, record, forward, or purport or pretend to forward to or for any race course, or person, within or without this state, any money, thing or consideration of value bet or wagered, or money, thing, or consideration of value offered for the purpose of being bet or wagered upon the speed or endurance of any man or beast; or who shall occupy any place or building or part thereof with books, papers, apparatus or paraphernalia for the purpose of receiving or pretending to receive, or for recording or registering, or for forwarding or pretending or attempting to forward in any manner whatsoever, any money, thing or consideration of value bet or wagered or to be bet or wagered for any other person, or who shall receive or offer to receive any money, thing or consideration of value bet or to be bet at any race track within or without this state, or who shall aid, assist or abet in any manner in any of the acts forbidden by this section, shall upon conviction be punished by a fine not exceeding five hundred dollars

($500) or imprisonment not exceeding one (1) year, and upon a second conviction of a violation of this section shall be imprisoned for a period not less than one (1), nor more than five (5) years. (Emphasis ours.)

## Appendix C

11-19-5. Acts in aid of policy game.—*Whoever keeps, sets up, promotes, or is concerned as owner, agent, clerk, or in any other manner, in managing any policy-lottery or policy-shop,* or writes, prints, sells, transfers, or delivers any ticket, certificate, slip, bill, token, or other device purporting or designed to guarantee or assure to any person, or to entitle any person to a chance of drawing or obtaining any prize or thing of value to be drawn in any lottery, or in the game or device commonly known as policy-lottery, or policy; or for himself or another person writes, prints, sells, or transfers or delivers, or has in his possession for the purpose of sale, transfer, or delivery, or in any way aids in selling, exchanging, negotiating, transferring, or delivering, a chance or ticket in any lottery, or in the game or device commonly known as policy-lottery or policy, or any such bill, slip, certificate, token, or other device, or who sells or offers to sell what are commonly called lottery-policies, or who indorses a book or other document, for the purpose of enabling others to sell or offer to sell lottery-policies, or shall receive, register, record, forward, or purport or pretend to forward, or undertake to forward, or receive, and agree to forward, to or for a lottery, or to or for any particular lottery, or to any person, within or without this state, any money, thing, or consideration of value, to purchase an interest or share in any lottery, or to obtain or secure for any person what is commonly called a lottery-policy, or a chance of drawing or obtaining any prize or thing of value to be drawn in any lottery, or in the game or device commonly called policy-lottery, or policy, or who shall receive or offer to receive any money, thing, or consideration of value to be forwarded to or for a lottery, or to or for any particular lottery, or to any person to invest in a lottery, within or without this state, whether the same actually exists or not, or whether any drawing of the same,

or any act to allot any prize or thing of value, takes place or not, or whether there be any such person or not, or whoever shall have in his possession, knowingly, any bill, slip, certificate, token, or other device, or article of any kind such as is used in carrying on, promoting, or playing the game commonly known as policy-lottery or policy, shall, upon conviction, be punished by fine not exceeding five hundred dollars ($500) or imprisonment not exceeding one (1) year, and upon a second conviction of a violation of this section shall be imprisoned for a period not less than one (1) nor more than five (5) years. (Emphasis ours.)

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*Charles A. Curran, Berge Gregian, Joseph A. Capineri,* for defendant.