301 A.2d 80.

STATE *vs.* DOMENIC T. SANGERMANO.

STATE *vs.* DOMENIC T. SANGERMANO.

FEBRUARY 28, 1973.

PRESENT: Roberts, C.J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The defendant was convicted by a jury in the Superior Court as a common gambler in violation of G. L. 1956 (1969 Reenactment) §11-19-18, and for possession of lottery slips in violation of §11-19-5. The cases are before this court on his exceptions to certain evidentiary rulings.

The state concedes that under our decision in *State* v. *Hindle*, 108 R. I. 389, 275 A.2d 915 (1971), defendant's conviction under §11-19-18 is void. In view of such concession, we shall confine our review to the exceptions briefed by defendant in the case charging him with possession of lottery slips. These exceptions challenge the correctness of certain evidentiary rulings.

The only witness presented by the state was Detective Thomas C. Griffin of the Rhode Island State Police. His testimony is in substance as follows. On November 29, 1968, he obtained a warrant to search defendant's home in Providence. At the time the search was made only defendant and his mother were on the premises. Detective Griffin and seven other officers arrived at the premises at about 1:10 p.m. He testified that he went to the front door, he knocked and said: "Open up, State Police. We have a search warrant for the premises or house, or words to that effect." After waiting twenty seconds

and hearing no response, the officers battered in the door with a battering-ram. He proceeded through the house and found a door in the kitchen leading to the basement. He smelled smoke when the door was opened. It took him about eleven seconds from the time the door was battered in to reach the cellar where he found defendant in a room near an incinerator with burning pieces of paper on the floor near the incinerator. He stamped on the pieces of paper to extinguish the flames. There was heavy smoke in the cellar area.

Detective Griffin identified himself to defendant and handed him the search warrant. Four partially burned slips of paper and a partially burned unmarked National Armstrong Daily News Review were found on the floor near the incinerator and seized. The four slips of paper are in evidence over defendant's objection, as state's exhibits 6A, 6B, 6C and 6D. The police also seized pads of paper, pencils, a radio, a Record American newspaper dated November 29, 1968, the telephone and an extension from the kitchen, small notebook-type pads and other articles of personal property. After defendant was placed under arrest the detective went to another room in the basement and took incoming calls on a telephone located therein. The callers were unidentified and unknown to him. Four of them attempted to place bets on horse races and one attempted to place a number bet.

Detective Griffin described his training and experience, in his police work, with gambling devices and apparatus. He then described what police lottery number bets were. With regard to exhibits 6A, 6B and 6C, after explaining the significance of the numbers written thereon, he testified that they recorded policy lottery bets. With respect to exhibit 6D, a slip of paper with "6 days" written on it and below the figures 12, 120, 120, 180, 600, 150 and 150, he testified that the "6 days" could represent a bet for six days on a

particular number, but the other figures were not policy lottery numbers.

The defendant presented the testimony of a licensed engineer who testified as an expert. He described the type of incinerator located in defendant's house and certain tests conducted relative to its burning propensities. He testified in substance that the incinerator was odorless and smokeless, that a person could not put in an object and pull it out without being burned, that material to be burned was placed in the top and from there it fell on a grate above the flame so that it could not fall through the grate without being completely burned, and that consequently exhibits 6A, 6B and 6C could not fall out of the burner partially burned.

The defendant also presented the testimony of a handwriting expert who testified that the handwriting on state's exhibits 6A, 6B, 6C and 6D was not defendant's. This was rebutted by Detective Griffin's testimony that in bookie operations, bookies receive papers from other persons or runners.

## I

We consider first defendant's exception to the admission in evidence of state's exhibit 6, which consists of the slips of paper marked 6A, 6B, 6C and 6D. The defendant argues that the state failed to lay a proper foundation for their admission because it did not properly identify the slips of paper nor prove they had not changed in condition by establishing a chain of custody since their seizure. The defendant's arguments under this exception are without merit.

The rule with regard to the question of what evidence of identification of an article is necessary to warrant its admission into evidence has been stated as follows in 2 Wharton, *Criminal Evidence*, §675 at 617 (12th ed. 1955):

> "It is not necessary that such identification should positively and indisputably describe and relate to such evidence. If a question of fact as to the connection

of the articles sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility."

In *State* v. *McCartin,* 106 R. I. 674, 262 A.2d 826 (1970), we had occasion to pass on the question of change of condition. One of the defendant's exceptions was based upon a lack of continuous control and custody of the capsules involved in that case and the possibility of tampering with the same. In passing on the defendant's exception, this court said at 680, 262 A.2d at 830:

"It is a rule of evidence in criminal proceedings that an object must be shown to be in substantially the same condition when offered as an exhibit as it was when the crime was committed. (citation omitted) This rule, however, does not require the prosecution to exclude all possibility that a physical object offered as an exhibit may have been tampered with, rather that the trial court must be satisfied that in all reasonable probability no such tampering has occurred."

In *McCartin* we sustained the trial justice because there was nothing in the record that would suggest that the questioned exhibit was anything but what the state said it was.

We examine the relevant testimony with respect to identification and custody of the four slips of paper. Detective Griffin testified that certain burnt slips of paper that were found outside of the incinerator on defendant's premises were brought to his attention by one of the other officers participating in the raid. He identified the slips as gambling paraphernalia and placed defendant under arrest. He further identified the slips of paper as the ones found on the floor outside of the incinerator and handed to him by one of the other officers. He then testified that these articles

had been in his control and custody since the day of the raid.

Detective Griffin's testimony, in our judgment, was sufficient to establish identification and to prove that the slips were in substantially the same condition as at the time of the raid. *T.N. Glass Corp.* v. *Adolph Aron & Son,* R.I., 147 A. 667 (1929).

As pointed out above, Detective Griffin testified that exhibits 6A, 6B and 6C recorded policy lottery bets. These slips of paper were clearly admissible.

However, defendant argues that exhibit 6D should not have been admitted because there was no substantive evidence that it was connected with carrying on, playing or promoting the game of policy lottery. The defendant bases this argument on Detective Griffin's testimony that certain figures appearing thereon were not policy lottery numbers. The trial justice admitted this exhibit on the basis of the witness's testimony that the notation "6 days" represented "* * * a bettor betting with the bookmaker for six days, not necessarily the numbers below this, but six days action." We believe that in the circumstances his ruling was correct. However, even if we assume that there was error in admitting this slip of paper, the conclusion is inescapable, in view of the cumulative nature of exhibit 6D, that it was not prejudicial error.

## II

The defendant's next exception is to the admission into evidence of a certain photograph. The relevant facts follow.

Detective Griffin testified that after he entered defendant's house, he proceeded to go down into the basement area; that when he reached the bottom of the stairs he could smell and see smoke and that defendant was standing in a room just to the witness's left; and that on the floor of this room there were smoldering pieces of paper in the vicinity of the incinerator. The witness was asked to

identify a photograph which the state wanted marked for identification. He replied that it was a photograph of the room to the left of the stairway. In reply to other questions about the photograph, he explained what was shown in the photograph and said that it was a fair and accurate representation of what it purported to show on the day in question. The trial justice admitted this photograph into evidence over defendant's objection.

The defendant argues that the photograph was improperly admitted because (1) there was no foundation laid as to who took the photograph, the photographic conditions under which it was taken, developed and printed, and (2) the state failed to specify the time at which it was taken or to identify what it was a fair and accurate representation of. This exception is without merit.

The absence of the person who took a photograph does not affect admissibility if the accuracy and correctness of the photograph can be otherwise established. *Williams* v. *Altruda,* 74 R.I. 47, 58 A.2d 562 (1948). The general rule governing the admissibility of photographs has been stated as follows in McCormick, *Evidence* §214 at 530-31 (2d ed. 1972):

> "The principle upon which photographs are most commonly admitted into evidence is the same as that underlying the admission of illustrative drawings, maps and diagrams. Under this theory, a photograph is viewed merely as a graphic portrayal of oral testimony, and becomes admissible only when a witness has testified that it is a correct and accurate representation of relevant facts personally observed by the witness. Accordingly, under this theory, the witness who lays the foundation need not be the photographer nor need he know anything of the time, conditions, or mechanisms of the taking. Instead he need only know about the facts represented or the scene or objects photographed, and once this knowledge is shown he can say whether the photograph correctly and accu-

rately portrays these facts. Once the photograph is thus verified it is admissible as a graphic portrayal of the verifying witness' testimony into which it is incorporated by reference."

In the case at bar Detective Griffin, after explaining what was shown in the photograph, testified that it was a fair and accurate representation of what it purported to show on the day in question. Whether the photograph was taken before or after the police emptied debris from the incinerator does not affect admissibility. As the court said in *Jenkins* v. *Associated Transport, Inc.*, 330 F.2d 706, 710 (6th Cir. 1964):

"A photograph adequately identified as correctly portraying conditions as they existed at the time of the event under consideration is admissible even though taken at some distance in time from the occurrence of the event. Inaccuracies or unreliability can be exposed by cross-examination (citations omitted). Whether such exhibits are sufficiently identified as to be reliable evidence is usually a matter within the discretion of the trial judge."

The admission of the photograph in question in the case at bar was not an abuse of discretion.

The exceptions which the defendant has briefed are overruled, those not briefed are deemed to be waived, and each case is remitted to the Superior Court for further proceedings.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Richard J. Israel,* Attorney General, *Edward E. Dillon, Jr.,* Special Asst. Attorney General, for plaintiff.

*William G. Grande, Judith E. Hodge,* for defendant.