341 A.2d 722.

STATE *vs.* JAMES OPEILEWSKI.

JULY 9, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

**KELLEHER, J.** The defendant was indicted on a charge of voluntary manslaughter. A Superior Court jury returned a guilty verdict for a lesser charge—assault with a dangerous weapon.

At approximately 7:30 p.m. on June 5, 1972, a unit of the Providence Fire Department Rescue Squad responded to a call for assistance from a home located at 64 Comstock Avenue. The rescue squad personnel proceeded to the second floor tenement where they administered first aid to Richard "Eddie" Kay. Kay was bleeding from a laceration that was located on the left side of his head just to the front of his left ear. The lieutenant in charge of the unit inspected the wound and saw the need for suturing. Consequently, a compress was applied to Eddie's head. Eddie then walked down the front stairs to the waiting rescue truck and was taken to St. Joseph's Hospital. There Eddie told the hospital attendants that he had injured himself when he fell. The physician on duty in the accident room took six stitches to close what he said was a deep wound. The treatment completed, Eddie left the hospital and returned "home" to 64 Comstock Avenue.

The next morning the Providence police responded to a call for help from the residents of the second floor tenement at 64 Comstock Avenue. When they arrived, they saw Eddie lying on the floor in a bedroom. He was unconscious. The rescue squad came and took Eddie to St. Joseph's Hospital where he died some 3 days later from a subdural cerebral hemorrhage. The police began an investigation

into the circumstances surrounding Eddie's death. Their efforts led to the return of the manslaughter indictment.

At the trial defendant's sister Joanne, two of her children, and a friend of the Opeilewskis testified for the prosecution. In essence, the sister and the children told the jury that on June 5, 1972, Eddie and defendant worked together at a car wash stand. Eddie arrived home from work first. Subsequently, defendant returned to the premises at about 4:15 p.m. Soon he and Eddie were engaged in an argument about Eddie's holding hands with the sister. Words led to punching and shoving. Within seconds, according to the two children, defendant picked up a bottle of beer and cracked it over Eddie's head. The defendant then picked up Eddie and threw him headfirst down the front stairway. Eddie walked up the stairs and returned to the apartment. He was bleeding. The sister, who had been doing some on-and-off drinking during the day, told the court and jury that she had "blacked out" during the beer-bottle episode but came to in time to see her brother throw Eddie down the stairway.

Following Eddie's initial departure to the hospital, defendant and his mother put some clothes into shopping bags and went to the home of friends by the name of Booth. Clifford Booth testified. Booth told the jury that he arrived home at about 1 a.m. on June 6, 1972. At that time he observed defendant listening to the police radio. The witness further stated that defendant was wearing a pair of blue dungarees that had blood stains on one of its legs. Booth also said that defendant told him he had been in a fight with his sister's boyfriend, Eddie Kay.

The defendant and his mother in their testimony insisted that it was the sister who had the argument with Eddie. They claimed that it was Joanne who wielded the beer bottle. After Eddie was hit, they said, he backed out on open door and then fell down the front stairs. The

mother and her son claimed that at the time of the assault, defendant was wearing grey pants. According to these two witnesses, defendant was asleep at the time of the altercation and once the blood started to flow, he removed himself from the living room and walked into another part of the tenement.

A pair of dirty blue dungarees bearing blood stains on the right leg is an exhibit. The dungarees' use as an exhibit is the sole issue being pressed in this appeal. The defendant contends that the prosecution failed to establish a sufficient evidentiary basis for their admission and that even if such a basis was present, their use as evidence created such undue prejudice that the dungarees should have been barred as an exhibit.

We have said that the prosecution in seeking to introduce some object as an exhibit is required to show that the object is in substantially the same condition when offered as an exhibit as it was when the crime was committed. *State* v. *McCartin,* 106 R. I. 674, 262 A.2d 826 (1970). Continuity of possession, we said, is an effective guarantee against the threat of tampering with an exhibit. We have stressed, however, that the prosecution is not required to exclude all possibility of tampering before an exhibit can be marked as a full exhibit. In such case the trial justice must be satisfied that in all reasonable probability the article or matter has not been changed in any material respect.

Here Booth testified that when he first saw defendant in the early morning hours he was wearing a pair of blood-stained[1] dungarees. The defendant and his mother had

---

[1]At the trial the defense offered no objection to Booth's description of the stains as being "blood." Before us, his appellate counsel offers a belated objection to this testimony. However, it is well settled that there is no need for expert testimony in this regard since such a fact is capable of determination by the ordinary person. *State* v. *Skipper,*

arrived at the Booth residence with two shopping bags. Each contained a change of clothing. Mrs. Opeilewski and her son were the Booths' house guests for almost a week. When defendant was taken to the District Court to be arraigned on the manslaughter charge, his mother and Clifford Booth went to the station to speak to the police. Booth told the trial justice that while he was at the station, the police asked him if he would give them defendant's dungarees. Booth and Detective Lieutenant Jeremiah P. Murphy drove to the Booth home. There Booth gave the lieutenant a shopping bag. The bag contained the blood-stained dungarees. Booth identified the dungarees as the ones defendant was wearing in the very early morning hours of June 6, 1972.

We see no error in the prosecution's use of the dungarees. When Booth saw defendant several hours after the beer-bottle incident, he was wearing the blood-stained trousers. It is probable that the next morning, when defendant awoke and dressed, he put on a pair of fresh pants and put the stained dungarees into one of the shopping bags. The bags and defendant and his mother had remained with the Booth family for a week when Clifford Booth delivered one of the bags and the pants to Detective Murphy. The evidence presented by the prosecution satisfied the continuity-of-possession requirement set forth in *McCartin*. There is nothing in the record that indicates any tampering with the dungarees.

Having found that the prosecution has satisfied *McCartin*, we come to defendant's argument that even though the dungarees were relevant evidence, they should not have been allowed into evidence because their probative

La. , 284 So.2d 590 (1973); *State* v. *Wilbur*, 278 A.2d 139 (Me. 1971); *Daniels* v. *State*, 213 Md. 90, 131 A.2d 267 (1957); *State* v. *Stimpson*, 15 N.C.App. 606, 190 S.E.2d 378, *cert. denied* 282 N.C. 155, 191 S.E.2d 604 (1972); 3 Underhill, *Criminal Evidence* §656 at 1588 (5th ed. 1957).

value was clearly outweighed by their potential for engendering undue prejudice in the minds of the jurors. *State* v. *Reardon,* 101 R. I. 18, 219 A.2d 767 (1966). The response to such a contention involves an examination of the exhibit and of the facts attendant to its admission, and an evaluation of its probable influence upon the outcome of the case. *State* v. *Bowden,* 113 R. I. 649, 324 A.2d 631 (1974).

The dungarees had some relevance when we consider the conflicting evidence presented to the jury. There was no doubt that once someone hit Eddie with the beer bottle, Eddie's head began to bleed. Joanne and her two children said defendant was in the living room and doing the hitting. The mother and son said that defendant was sleeping on the living room sofa and was awakened by the Eddie-Joanne fracas, and that, once aware of what was going on, he left the living room and, according to him and his mother, he beat a hasty retreat to the bathroom. The dungarees give some indication of what actually went on at the Opeilewski tenement during the early evening hours of June 5, 1972.

We have examined the dungarees. They are a well worn pair of work pants which have dull-looking stains whose obvious source is blood. It is the type of stain a parent often sees when one of his offspring reports home with a cut or abrasion received by sliding into second base, falling off a bicycle, or losing one's balance while roller skating. The use of the stained pants as an exhibit had no tendency whatever to arouse the passions of the jury. There was no error in the admission of the dungarees into evidence.

The defendant's appeal is denied and dismissed.

*Julius C. Michaelson,* Attorney General, *Judith R. Wegner,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *David L. Martin,* Asst. Public Defender, for defendant.