JACK ELMER SUMMERS, APPELLANT, v. WARDEN, NEVADA STATE PRISON, RESPONDENT.

No. 5447

May 6, 1968                      440 P.2d 388

*Manoukian and Manoukian,* of Zephyr Cove, for Appellant.

---

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Virgil D. Dutt,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

The issue presented by this appeal from a denial of the post-conviction application of Jack Elmer Summers for a writ of habeas corpus, is whether the sense of justice implicit in the constitutional demands of equal protection and due process requires that there be credited against his present sentence for rape the time which he had served under a prior void conviction based upon the same acts. For reasons hereafter expressed we hold that he is entitled to such credit, reverse the district court, and order his release from prison.

On May 14, 1957, Summers was charged with the crime of rape accompanied by acts of extreme violence with great bodily injury to the victim. Without counsel, he executed a waiver of preliminary examination, pled guilty to the charge, and was sentenced to imprisonment for not less than 20 years nor more than the term of his natural life. On May 15, 1957, he was delivered to the Nevada State Prison to serve that sentence.

On July 8, 1966, with the assistance of counsel, Summers was granted relief by the United States District Court on the ground that his constitutional right to the assistance of counsel at arraignment and plea in the state court had been denied, since the waiver of his right to counsel was not shown to have been made in a manner consistent with due process. Thereafter, he was rearraigned in the state court on an amended information charging forcible rape, but omitting an allegation of

extreme violence with great bodily injury. He entered a plea of guilty, and was sentenced to the Nevada State Prison for not less than five nor more than ten years. The second conviction was based upon the same facts that supported the earlier one. The record shows that at the time the court below ruled on the instant application Summers had been confined in the Nevada State Prison for more than ten years since his 1957 conviction, not counting statutory time credits. Accordingly, he asserts that he has completed the maximum sentence directed by the second, valid conviction and is entitled to immediate release. Of course, it is apparent that if he is entitled to credit for time served under the void conviction for rape with violence, he has more than fulfilled the term of the sentence under the subsequent conviction for rape, and is being illegally detained in prison.

1. When Summers was brought before the state court in 1966 to plead to the amended information, the statute authorized a sentence of "not less than 5 years and which may extend to life." NRS 200.360(1).[1] The court imposed a sentence of not less than five nor more than ten years. The record is silent as to why the court fixed the maximum term of imprisonment at ten years. Were the record to show that its reason for doing so was to accord Summers credit for time served under the earlier void conviction, the constitutional issue now before us would not be reached since, in such case, credit would have been given for time served and the sentence would be within limits authorized by the statute. This, however, is not the case before us. Here, the record does not reflect that the court gave credit for time served under the earlier void conviction. We may not conjecture about the undisclosed thoughts of the sentencing judge when he pronounced sentence. Thus, it is evident that constitutional standards are involved.

2. The state contends that it is constitutionally permissible to deny credit in these circumstances. Newman v. Rodriquez, 375 F.2d 712 (10 Cir. 1967). The contention centers mainly on the premise that penalty is a legislative matter, and since the Nevada Legislature has not allowed for credit, none may be given. When the sentences in this case were imposed, NRS

---

[1]NRS 200.360(1) provided: "Rape is the carnal knowledge of a female, forcibly and against her will, and a person duly convicted thereof shall be punished by imprisonment in the state prison for a term of not less than 5 years and which may extend to life; but if such crime be accompanied with acts of extreme violence and great bodily injury inflicted, the person guilty thereof shall be punished by imprisonment in the state prison for a term of not less than 20 years, or he shall suffer death, if the jury by their verdict affix the death penalty."

176.410(3) provided that "the term of imprisonment * * * shall begin on the date of sentence of the prisoner by the court," which may be read to suggest that the giving of credit is precluded. Meyers v. Hunter, 160 F.2d 344 (10 Cir. 1947).[2] This argument was presented to the United States District Court for the District of Nevada and rejected. Gray v. Hocker, 268 F.Supp. 1004 (1967). That court held NRS 176.410(3) unconstitutional as applied to the petitioner in that case, since to apply the statute literally would violate Equal Protection and Due Process. We agree with the reasoning of Gray v. Hocker, supra, and with the consonant expressions of Lewis v. Commonwealth, 108 N.E.2d 922 (Mass. 1952); Hill v. Holman, 255 F.Supp. 924 (1966); Patton v. State, 256 F.Supp. 225 (1966).

3.   The Fourteenth Amendment commands that: "* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Each command would be violated were we to ignore reality and treat the petitioner as though he had never been in prison pursuant to the first void conviction—to say that since he should not have been imprisoned as he was, he was not imprisoned at all. The Due Process clause of the Nevada Constitution (art. 1, § 8) is equally offended.

Due process forbids action which is fundamentally unfair and shocking to the universal sense of justice. In Palko v. Connecticut, 302 U.S. 319 (1937), Justice Cardozo wrote: "Fundamental too in the concept of due process, and so in that of liberty, is the thought that condemnation shall be rendered only after trial. [Citations.] The hearing, moreover, must be a real one, not a sham or a pretense." Id. at 327. A necessary corollary of that statement is that due process precludes imprisonment upon a constitutionally infirm conviction, and demands correction when such occurs. The conviction is corrected by setting it aside, and adjustment is made for the illegal imprisonment by allowing credit therefor against a later sentence based upon the same facts. We believe that any other result would brutalize legitimate social interests.

The court in Gray v. Hocker, supra, further noted that NRS 176.410(3) applies inflexibly and without discrimination to all convicted defendants. The statute does not distinguish between those who successfully invoke post-conviction remedies as

---

[2]Cases are collected at 35 A.L.R.2d 1283. The authorities are split.

opposed to those whose efforts are unsuccessful or who make no effort. The failure to so distinguish "denies the equal protection of the laws to him who successfully asserts a post-conviction remedy while serving the initial sentence and is thereafter resentenced for the same offense or acts for which sentence was originally imposed." Id. at 1008. We agree, as well, with that observation.

For the reasons expressed the ruling below is reversed, the petitioner's application for habeas corpus is granted, and it is ordered that he be released from prison.

ZENOFF, BATJER, and MOWBRAY, JJ., concur.

COLLINS, J., dissenting:

This is a case in which some relief may be justified. But I think that relief has already been accorded by the lower court and should judicially restrain us from establishing another constitutional precedent.

When petitioner pleaded guilty to the lesser crime of forcible rape, without extreme violence or great bodily injury, arising out of the same facts which supported the earlier conviction of rape with extreme violence and great bodily injury he received a substantially and markedly lesser sentence than the court could have given him. He could have been sentenced to a term of not less than 5 years nor more than life. True the record does not reflect the reasons why the trial court exercised its discretion in fixing a maximum of 10 years instead of life. But the reason, though not stated, leaps out of the record with clarity. The maximum sentence of less than life reflected a concession made by the trial judge for the time served by petitioner under the previous void sentence. Such conclusion is a fair one in light of the entire record before us. To put it another way had the lower court fixed the maximum sentence of life on the second conviction, instead of 10 years, then perhaps the relief accorded here could be constitutionally justified.

In such respect this case differs materially from Gray v. Hocker, 268 F.Supp. 1004 (1967) where the maximum time under the second sentence was previously served under the void first sentence.

This, like most problems arising under the criminal law, is not a black or white situation. The problem, with its constitutional overtones, is one for the legislature after we call attention to it. For example, how much of the previous time served should be credited on the new sentence? All of it or only a part? Should only straight time be credited or, in addition work time, blood donation time and good conduct time as well? Suppose

the defendant had been a recalcitrant prisoner and had credits revoked for violation of prison rules, regulations and discipline. Should he be allowed or denied that time as credit on the new sentence? Likewise, should time spent in jail prior to sentence and conviction be credited? If the theory is that "social interests are brutalized" by such imprisonment then imprisonment prior to a void conviction is just as brutal as imprisonment afterwards. We cannot by court rule establish such a comprehensive plan. The legislature if willing, could.

In declaring unconstitutional NRS 176.410(3), at least as to this petitioner, it narrows the area within which the legislature might otherwise operate if it undertakes consideration of the problem. This is not one of those situations where we are obligated to follow a binding opinion of the United States Supreme Court, but a constitutional decision of our own. I fear by premising too many decisions of this type upon constitutional authority we are building a legal wall of protection around the criminal which hinders terribly society's right to protect itself effectively and adequately against criminals. This court is now telling the legislature its statutory scheme for punishment of criminals is void and violates due process because it is fundamentally unfair and shocking to the universal sense of justice. That sense of justice is not so universal or shocked as the court indicates. Many other federal courts have upheld a denial of credit for time served on a void judgment. See Newman v. Rodriquez, 375 F.2d 712 (1967); Meyers v. Hunter, 160 F.2d 344 (1947); Watson v. Commonwealth, 260 F.Supp. 474 (E. D. Penn. 1966); Ex parte Ferrell, 406 S.W.2d 440 (Tex.App. 1966); Moore v. Buchko, 144 N.W.2d 670 (Mich.App. 1966). They say, as we should, sentencing is a matter of legislative prerogative. We should be careful in invading that prerogative absent a compelling necessity.

Sadly again, this court seems concerned only with petitioners rights against society and that unless he is granted full credit for time served under the void judgment "legitimate social interests would be brutalized." I think we should be equally as concerned in protecting society from petitioners brutality and the young girl he offended by forcibly raping her.

He has offended society, not the reverse. Society has already accorded him valuable relief in setting aside his first conviction (on a technicality—lack of counsel on the first conviction) which in no way lessened the fact of his crime against society. He pleaded guilty again to a lesser degree of the same crime and even then received further considration from the court when it reduced the maximum sentence from life to 10 years.

The practical realities of this case do not justify, in my opinion, constitutional relief.

I dissent.