DAVID LEE CARTER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5522

October 28, 1968                    446 P.2d 165

*Stewart & Horton,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, and *T. David Horton,* District Attorney, Lander County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

David Lee Carter appeals from a jury verdict finding him guilty of assault with a deadly weapon.

In the early morning hours of January 20, 1967, David Lee Carter, in the company of his younger brother, Mitchell J. Carter, visited a roadhouse in Lander County near Battle Mountain. They ordered drinks from the barmaid, Jeanne, and David engaged one of the employees, Carrole Lauderbaugh, in conversation. A dispute arose between David and Carrole which climaxed in David's throwing his glass of whiskey (which he complained of being iced tea) in Carrole's face, grabbing her throat, and cutting her about the face with his broken glass. The struggle and cutting continued, with Carrole holding her chin down and against her body to prevent David from cutting her throat. The assault finally ended when Sugar, a kitchen maid, entered the bar and, with Jeanne's, the barmaid's, assistance, telephoned "the law."

David and his brother, Mitchell, were charged with assault with a deadly weapon, and assault and battery. Mitchell was acquitted, and David appeals from the jury conviction of assault with a deadly weapon. He asserts four specifications of error as grounds for reversal: (1) The court erred in admitting the glass in evidence; (2) the State exceeded the proper limits in cross-examining Mrs. Lois Carter, David's mother, whom he called as his character witness; (3) the jury's verdict was the result of weariness and the influence of the trial judge's comments; and (4) the sentence imposed is excessive and in violation of the statute in effect at the time the court sentenced David.

With the exception of No. 4, we find the specifications of error without merit, and the conviction must stand.

1. Appellant complains that the broken glass should not have been received in evidence, because (1) it was never positively identified as *the* glass which David used to cut Carrole, and (2) the foundation for its admission was inadequate, in that the chain of custody was not complete.

The record does not support appellant's contention, for it shows that, immediately following the assault, Sugar, the kitchen maid, recovered the broken glass, which was covered with blood, and gave it to the barmaid, Jeanne, who handed it to Deputy Sheriff Edgar. Edgar delivered the broken glass to Sheriff Schwinn. Except for the time when the sheriff sent the glass to the FBI headquarters for processing, the glass was kept by the sheriff in a locked file cabinet. The trial judge, in properly overruling objections to the admission of the glass in evidence, said:

"MR. HORTON: Yes. At this time we will offer State's Exhibit 'A', the cocktail glass.

"THE COURT: Do you have any objection?

"MR. RICHARDS: Yes, your Honor. With regard to this glass, it can be admitted as a broken cocktail glass. Any other testimony with regard to it, your Honor, particularly whether this was a glass that—I mean it is just a broken cocktail glass.

"THE COURT: Well, that is up to the jury to determine. All right, admitted in evidence as a broken cocktail glass."

The victim, Carrole; the barmaid, Jeanne; and the kitchen maid, Sugar, testified that the glass received in evidence "looked like," or was similar to, the glass David used in cutting Carrole. This is sufficient, for it is not necessary that the object received be positively identified. It is sufficient if it is recognized that it is similar or bears a sufficient resemblance to remove the elements of mere speculation and surmise. People v. Cullen, 234 P.2d 1 (Cal. 1951).

A proper foundation was laid for the broken glass. The chain of custody was established. It is not necessary to negative the possibility of an opportunity for tampering with an exhibit nor to trace its custody by placing each custodian upon the stand. The statement that the exhibit is the identical object or reasonably resembles it and that it is in the same condition as at the time the offense occurred makes the exhibit admissible. Eisentrager v. State, 79 Nev. 38, 45, 378 P.2d 526, 531 (1963).

2. Lois Carter, David's mother, was called as his character witness. Mrs. Carter testified at length that David was a good boy, was helpful at home, had not been in any trouble, and had a good reputation for truth and veracity. On cross-examination, the prosecutor questioned Mrs. Carter and asked if she knew David had been in trouble in Batavia, New York, in 1957. Similar questions were asked about other places and times through July 1966. Mrs. Carter answered, "No," to each of the questions.

David took the stand and testified as to his version of the assault, flatly denying that he had cut Carrole. He was asked by his counsel regarding "his trouble" at the times and places previously asked his mother by the prosecutor, and he testified regarding them before the jury.

It is generally held that a character witness may be cross-examined as to the existence of reports of particular acts or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed to him by the witness—not to test the truth of the facts, but to test the credibility of the witness and to ascertain what weight is to be given the witness's testimony. Such cross-examination is improper, however, when the witness testifies not to the reputation of the accused but to personal knowledge of his character. Lois Carter testified on direct examination both from her personal knowledge of David and regarding his reputation for truth and veracity.

"Q. And what was his reputation for truth and veracity in his adult life?

"A. Very good. * * *."

Trial courts are clothed with a broad discretion in respect to permitting the cross-examination of the defendant's character witness as to rumors or reports of particular acts or offenses. People v. Burwell, 279 P.2d 744 (Cal. 1955).

A general recognition of the dangerous condition of the evidence produced by the cross-examination of the defendant's character witness as to particular acts of the defendant requires that the cross-examination not be extended beyond its true limits and that it should be carefully limited by an admonition of the trial court, defining its purposes. 3 Wigmore, Evidence § 988 (3d ed. 1940).

A very high degree of good faith on the part of the prosecuting officer is required in such examination. People v. McKenna, 79 P.2d 1065 (Cal. 1938).

The questions put to a character witness on cross-examination should never be asked for the purpose of intimating the defendant's guilt of other offenses which have no foundation in the prosecutor's knowledge or information.

We find nothing in the record before us to indicate that the questions of the prosecutor exceeded the bounds of legitimate cross-examination.

3.   The case was submitted to the jury at 11:35 a.m. The jury returned at 7:40 p.m. The foreman submitted the jury's verdicts finding David guilty of assault with a deadly weapon and his brother Mitchell guilty of assault and battery. The trial judge returned the verdicts to the foreman with the statement:

"THE COURT:   You are going to have to find him [Mitchell] guilty in the same degree as his brother [David], or acquit him, but you can't find him guilty of assault and battery.

"JUROR MAGEE:   We can acquit him or find him guilty of the same thing as his brother?

"THE COURT:   Under that Instruction."

The jury returned at 10:05 p.m., and at their request testimony from the record was read to them. The trial judge inquired if they wished to retire for the evening and commence their deliberations at nine o'clock the following morning. The majority desired to continue deliberating. The jury retired and returned at 11:16 p.m. The jury found David guilty of assault with a deadly weapon. Mitchell was acquitted.

There is nothing in the record before us to indicate that the jury's verdicts were the result of "weariness" or the trial judge's influence, as appellant charges. On the contrary, the transcript reveals that the trial judge admonished the jurors:

"THE COURT:   Well, the only thing about this, it might be that you all want to get home and coerce a verdict. I don't want this to happen. Most of you, naturally, want to get home."

"JUROR MAGEE:   I think that we are very anxious to reach a fair decision. * * *."

4.   We turn to consider appellant's final specification of error—that the sentence imposed by the judge was excessive

and in violation of the statute then in effect. We agree. David and Mitchell were charged with two offenses: (1) assault with a deadly weapon[1] and (2) assault and battery. The trial judge sentenced David to serve not less than 1 nor more than 14 years in the state penitentiary. This penalty applied to the *first* subsection of NRS 200.400. The jury found David guilty of assault with a deadly weapon,[2] for which the penalty was as stated in the *second* subsection of NRS 200.400, i.e., confinement of not less than 1 year nor exceeding 2 years and/or a fine of not less than $1,000 nor exceeding $5,000.

In State v. Johnson, 75 Nev. 481, 483, 346 P.2d 291, 292 (1959), we said:

"A judgment of conviction and sentence must conform to the punishment prescribed by statute. Ex Parte McClure, 6 Okl.Cr. 241, 118 P. 591.

"* * *

"Where the penal statute gives no discretion to the trial court in fixing the punishment, it would be proper for this court without remand to modify the sentence to conform to the statute. State v. Moore, 48 Nev. 405, 233 P. 523. In this case, however, the applicable statute does give discretion, limited as it is to the amount of the fine."

The trial court in the instant case is given discretion in fixing the punishment, under NRS 200.400. Therefore, the cause must be remanded with directions to the trial judge to

---

[1] "1.   An assault with intent to kill, commit rape, the infamous crime against nature, mayhem, robbery or grand larceny shall subject the offender to imprisonment in the state prison for a term not less than 1 year, nor more than 14 years; but if an assault with intent to commit rape be made, and if such crime be accompanied with acts of extreme cruelty and great bodily injury inflicted, the person guilty thereof shall be punished by imprisonment in the state prison for a term of not less than 14 years, or he shall suffer death, if the jury by their verdict affix the death penalty.

"2.   An assault with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show an abandoned and malignant heart, shall subject the offender to imprisonment in the state prison not less than 1 year or exceeding 2 years, or to a fine not less than $1,000, nor exceeding $5,000, or to both fine and imprisonment." [This section was amended in 1967, but these definitions were not changed, and the new penalties apply only to offenses committed on or after July 1, 1967.]

[2] "We, the jury in the above-entitled action, do find the defendant DAVID LEE CARTER GUILTY OF ASSAULT WITH A DEADLY WEAPON."

correct his judgment in accordance with the terms of the statute and in his discretion as he may deem proper.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.