MORRIS EDWIN ANGLIN, Jr., MARTIN FRANK BAILEY, DAVID BEARD, KENNETH BRITT, CHARLES CALBERT, MAURICE R. CHASSE, ROBERT MILTON GARRETT, ALVIN GORMAN HARPER, JAMES CLIFFORD HIGGINS, JOSEPH K. McGRANE, LEWIS L. SANDLIAN, DENNIS WARREN, LA VAL FISHER and RICHARD SCOTT, Appellants, v. THE STATE OF NEVADA AND WARDEN, NEVADA STATE PRISON, Respondents.

Nos. 7331, 7397, 7355, 7330, 7348, 7389, 7356, 7347, 7361, 7349, 7388, 7398, 7229, 7390

July 26, 1974                    525 P.2d 34

*Gary A. Sheerin* and *H. Rodlin Goff,* State Public Defender, Carson City, for Appellants.

*Robert List,* Attorney General, Carson City; *Robert E. Rose,* District Attorney, and *Kathleen M. Wall,* Assistant

Chief Deputy District Attorney, Washoe County, for Respondents.

*Morgan D. Harris,* Public Defender, and *Thomas D. Beatty,* Assistant Public Defender, Clark County, Amici Curiae.

**O P I N I O N**

By the Court, MOWBRAY, J.:

The main issue presented in each of these appeals is whether an indigent defendant who is financially unable to post bail should be given credit on his prison term for detention in the county jail pending his trial and sentencing.

The appeal of Morris Edwin Anglin, Jr., No. 7331, was the principal case argued before the court. The remaining 13 appeals, involving the same or related issues, have been consolidated herein for disposition. Our opinion, however, will be anchored on the factual history of the Anglin case.

1.  *The Facts.*

Anglin was convicted of forgery on April 19, 1969. He was sentenced to life imprisonment as an habitual criminal. The sentence was later commuted to 10 years, the statutory maximum for the crime of forgery.

Anglin was never given any credit for the 99 days he spent in the Washoe County jail while awaiting trial. Although bail

had been fixed, Anglin was financially unable to post the required bail. The issue presented is what credit, if any, Anglin should be allowed for his presentence detention on his 10-year prison term.

Both this court and the Legislature have considered the general question of sentence credit, but not in the context of a person financially unable to post bail.

2.  *The Legislative Background.*

In 1967, our Legislature granted discretion to our district courts to order that credit be allowed on county jail sentences for time spent in the jail prior to conviction. NRS 176.055 (1967).[1] In 1971, credit for pretrial confinement was extended to state prison commitment. NRS 176.055 (1971).[2] In 1973, the statute was amended to provide that, while credit may be applied to the duration of the sentence, credit so allowed may not alter the date from which the term of imprisonment is computed.[3]

Since the enactment of NRS 176.055 in 1967, the Legislature has expanded the scope of its coverage by giving the district courts the power to allow presentence credit on prison terms. By so doing, our Legislature has implemented a suggestion of the American Law Institute Model Penal Code §

---

[1]NRS 176.055 (1967):

"Whenever a sentence of imprisonment in the county jail is imposed, the court may in its discretion order that credit be allowed against such sentence, including any minimum term thereof which may be prescribed by law, for the amount of time actually spent by the defendant in confinement prior to conviction, unless such confinement was pursuant to a judgment of conviction for another offense."

[2]NRS 176.055 (1971):

"Whenever a sentence of imprisonment in the county jail *or state prison* is imposed, the court may in its discretion order that credit be allowed against such sentence, including any minimum term thereof which may be prescribed by law, for the amount of time actually spent by the defendant in confinement prior to conviction, unless such confinement was pursuant to a judgment of conviction for another offense." (Emphasis indicates new language added to this statute in 1971 that was not in the original, 1967 statute.)

[3]NRS 176.055 (current version, as amended in 1973):

"Whenever a sentence of imprisonment in the county jail or state prison is imposed, the court may in its discretion order that credit be allowed against *the duration of* such sentence, including any minimum term thereof which may be prescribed by law, for the amount of time actually spent by the defendant in confinement prior to conviction, unless such confinement was pursuant to a judgment of conviction for another offense. *Credit allowed pursuant to this section does not alter the date from which the term of imprisonment is computed.*" (Emphasis indicates language added in 1973.)

·7.09 (Proposed Official Draft, May 4, 1962),[4] and has followed the action of the Federal Government, which permits a similar sentence credit under the Bail Reform Act of 1966. 18 U.S.C. § 3568.[5] Further, this legislation comports with ABA Standards Relating to Sentencing Alternatives and Procedures § 3.6(a) (Approved Draft, 1968).[6]

Presentence detention is behind-bars confinement. Legal categories do not remove the punitive aspects of the rigors and restraints of detention. As legal commentators have noted, the denial of credit for "dead time"—time spent in incarceration before delivery of the defendant to the state prison—is basically a failure to recognize the punitive aspect of pre-dispositional confinement.[7] Sensitive to these concerns, our Nevada Legislature has afforded the district courts an opportunity to grant credit for presentence deprivation of liberty.

### 3. *The Court Background.*

Anglin predicates his constitutional claim for the 99 days'

---

[4]Model Penal Code § 7.09 (Proposed Official Draft, May 4, 1962) provides in part:

"(1) When a defendant who is sentenced to imprisonment has previously been detained in any state or local correctional or other institution following his [conviction of] [arrest for] the crime for which such sentence is imposed, such period of detention following his [conviction] [arrest] shall be deducted from the maximum term, and from the minimum, if any, of such sentence. . . ."

[5]18 U.S.C. § 3568 was amended to provide:

"The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. . . ." Pub. L. 89–465, § 4 (June 22, 1966), 80 Stat. 217 (1966). See also 1966 Cong. and Adm. News 2306.

[6]Section 3.6(a) of ABA Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968) provides:

"Credit against the maximum term and any minimum term should be given to a defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on wh'ch such a charge is based. This should specifically include credit for time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to arrival at the institution to which the defendant has been committed."

[7]See Schornhorst, *Presentence Confinement and the Constitution: The Burial of Dead Time*, 23 Hast. L.J. 1041–1042 (1972); Note: *Sentence Crediting for the State Criminal Defendant—A Constitutional Requirement*, 34 Ohio State L.J. 586 (1973); and Note: *Credit for Time Served Between Arrest and Sentencing*, 121 U.Pa. L.Rev. 1148 (1973).

presentence jail detention credit on the ground that he was an indigent and therefore unable to secure a bond for his pre-dispositional release.

The claim of invidious discrimination because of lack of wealth is based upon the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution as announced in Tate v. Short, 401 U.S. 395 (1971), and Williams v. Illinois, 399 U.S. 235 (1970).[8]

Williams v. Illinois, supra, applied the well established doctrine of Griffin v. Illinois, 351 U.S. 12 (1956), prohibiting invidious discrimination against a defendant without funds so as to preclude his incarceration beyond the statutory maximum for confinement because of a default on a fine. Williams was a precursor of Tate v. Short, *supra,* which extended the Williams holding to preclude Texas from confining a traffic offender who had received fines totaling $425 but who was financially unable to pay the fines. In each case, the State was prohibited from exploiting the impecuniarity of the defendant. The rules announced on these cases are relevant to a consideration of the presentence confinement of an indigent defendant.

Although the United States Supreme Court has not directly ruled on the issue, the action of the Court in Gaines v. United States, 402 U.S. 1006 (1971), provides guidance in the instant case. Bernard Gaines was sentenced to serve 2 years on a federal narcotics charge, and then he was delivered to the New York authorities to answer State murder and robbery charges. More than a year after Gaines was first jailed by the State without bail, the State court set bail in the amount of $7,500, but Gaines was unable to post it. On a federal post-conviction petition, Gaines requested the *federal* authorities to credit his federal sentence for the time spent in *State* custody, because he was financially unable to post bail. The federal district court and the United States Court of Appeals denied relief because the federal statute, 18 U.S.C. § 3568, did not provide for such credit. In response to Gaines' petition for certiorari before the United States Supreme Court, the Solicitor General acknowledged that the express terms of the aforementioned statute did not grant to the federal authorities the right to give credit for time spent in State custody for nonfederal purposes, but the Solicitor General did state:

". . . To construe Section 3568 to deny Nelson [a petitioner

---

[8]Such a claim may also be asserted under our State Constitution, art. 4, § 21, which provides: ". . . [A]ll laws shall be general and of uniform operation throughout the State."

similarly situated to Gaines] relief under these circumstances would be inconsistent with the spirit of numerous decisions of this Court requiring that justice be applied to all persons equally and not on the basis of ability to pay. Williams v. Illinois, 399 U.S. 235, 241; cf. Rinaldi v. Yeager, 384 U.S. 305; Hardy v. United States, 375 U.S. 277; Draper v. Washington, 372 U.S. 487; Lane v. Brown, 372 U.S. 477; Douglas v. California, 372 U.S. 353; Gideon v. Wainwright, 372 U.S. 335; Coppedge v. United States, 369 U.S. 438; Smith v. Bennett, 365 U.S. 708; Eskridge v. Washington Prison Board, 357 U.S. 214; Griffin v. Illinois, 351 U.S. 12. Section 3568 is in our view not so inflexible in its provisions as to be incompatible with an interpretation that would give Nelson the relief he seeks." (Footnote omitted.) Memorandum for the United States at 14, 15, Nelson v. United States, 402 U.S. 1006 (1971).

Upon remand to the Court of Appeals, the High Court held:

". . . Gaines' lack of wealth has resulted in his having to serve a sentence that a richer man would not have had to serve, an impermissible discrimination according to *Tate* and *Williams*. Accordingly, Gaines ought to be credited with the time spent in state custody after bail was set."[9] United States v. Gaines, 449 F.2d 143, 144 (2d Cir. 1971).

We agree with the Court's reasoning in Gaines and therefore hold that our statute, NRS 176.055, should also be construed to provide credit for confinement prior to a defendant's arrival at the state prison, where (1) bail has been set for the defendant and (2) the defendant was financially unable to post the bail. Under such circumstances, the district courts must allow such credit. To provide otherwise would tolerate invidious discrimination based upon a defendant's financial status.

Our decision in Ibsen v. Warden, 86 Nev. 540, 471 P.2d 229 (1970), does not direct a contrary result. The statute applicable at that time did not permit a credit on a state prison sentence, and, more importantly, we there were concerned with a defendant charged with murder who, prior to his trial and retrial, had been held without bail. The granting of credit in cases such as Ibsen more properly falls within the general guidelines of Summers v. Warden, 84 Nev. 326, 440 P.2d 388 (1968).

---

[9]The Court did not give credit for the substantial period of time Gaines was held by the State authorities without bail, because even if he had funds he would have been unable to secure his release.

The authorities relied upon by the State to deny the credit Anglin seeks, including Ibsen, either antedate Gaines or fail to discuss its ruling. The fair impact of Williams and Tate are to place the indigent defendant, insofar as possible, on a par with the affluent defendant. If the moneyed defendant may secure release prior to trial, then the indigent defendant who stands convicted should be able to offset his term of imprisonment in all respects as if the confinement served prior to sentencing was served after sentence.[10]

Presentence confinement under the circumstances presented shall be applied in the determination of the maximum duration or term of imprisonment, the minimum term, "good time" credits under NRS 209.280[11] and 209.285,[12] and "good time" credits for county jail time.[13]

---

[10]The State has urged a different construction of the 1973 amendment to NRS 176.055, but we choose to adopt a statutory interpretation that avoids constitutional violation.

[11]NRS 209.280:

"1. Every convict who is sentenced to the state prison on or before June 30, 1969, who shall have no serious infraction of the rules and regulations of the prison, or laws of the state, recorded against him, and who performs in a faithful, orderly and peaceable manner the duties assigned to him, shall be allowed for his term a deduction of 2 months in each of the first 2 years, 4 months in each of the next 2 years, and 5 months in each of the remaining years of the term, and pro rata for any part of a year where the sentence is for more or less than a year.

"2. The mode of reckoning credits shall be as shown in the following table:

SCHEDULE OF CREDITS

| Number of years of sentence. | Good time granted. | Total good time made. | Time to be served if full time is made. |
|---|---|---|---|
| 1st year | 2 months | 2 months | 10 months |
| 2nd year | 2 months | 4 months | 1 year, 8 months |
| 3rd year | 4 months | 8 months | 2 years, 4 months |
| 4th year | 4 months | 1 year | 3 years |
| 5th year | 5 months | 1 year, 5 months | 3 years, 7 months |
| 6th year | 5 months | 1 year, 10 months | 4 years, 2 months |
| 7th year | 5 months | 2 years, 3 months | 4 years, 9 months |
| 8th year | 5 months | 2 years, 8 months | 5 years, 4 months |
| 9th year | 5 months | 3 years, 1 month | 5 years, 11 months |
| 10th year | 5 months | 3 years, 6 months | 6 years, 6 months |

and so on through as many years as may be the term of the sentence.

"3. In addition to the credits for good behavior provided for in subsection 1, the board may adopt regulations allowing credits for convicts whose diligence in labor or study merits such credits and for convicts who donate their blood for charitable purposes."

[12]NRS 209.285:

"1. Every convict who is sentenced to the state prison after June 30, 1969, who has no serious infraction of the rules and regulations of

## 4. *Retroactive Sentence Credit.*

Anglin was sentenced in 1969, when NRS 176.055 did not expressly provide for credit on a state prison sentence. Ibsen

---

the prison, or laws of the state, recorded against him, and who performs in a faithful, orderly and peaceable manner the duties assigned to him, shall be allowed for the period he is actually incarcerated under sentence a deduction of 2 months for each of the first 2 years, 4 months for each of the next 2 years, and 5 months for each of the remaining years of the term, and pro rata for any part of a year where the actual term served is for more or less than a year. Credit shall be recorded on a monthly basis as earned for actual time served.

"2. The mode of reckoning credits shall be as shown in the following table:

### SCHEDULE OF CREDITS

| Number of years served. | Good time granted. | Total good time made. |
|---|---|---|
| 1 year | 2 months | 2 months |
| 2 years | 2 months | 4 months |
| 3 years | 4 months | 8 months |
| 4 years | 4 months | 1 year |
| 5 years | 5 months | 1 year, 5 months |
| 6 years | 5 months | 1 year, 10 months |
| 7 years | 5 months | 2 years, 3 months |
| 8 years | 5 months | 2 years, 8 months |
| 9 years | 5 months | 3 years, 1 month |
| 10 years | 5 months | 3 years, 6 months |

and so on through as many years as may be the term of the sentence. The 'total good time made' shall be deducted from the maximum term imposed by the sentence and shall apply to parole eligibility as provided in NRS 213.120.

"3. In addition to the credits for good behavior provided for in subsection 1, the board may adopt regulations allowing credits for convicts whose diligence in labor or study merits such credits and for convicts who donate their blood for charitable purposes.

"4. No convict allowed to go outside the prison walls on parole may earn the credits herein provided after the effective date of his release upon parole.

"5. Each convict is entitled to the deductions allowed by this section if he has satisfied the conditions of subsection 1 as determined by the warden."

[13]The language of a federal district court in an order granted in Steele v. North Carolina, 348 F.Supp. 1023, 1025 (W.D.N.C. 1972), is appropriate to the issue before us:

"The credit shall be computed as though petitioner had begun serving his sentence on the first day he was incarcerated and shall be credited at the front end of sentence, rather than being reserved for credit against the last part of the sentence; that is, the prisoner's time served as of now shall be computed by treating as his first time served the time spent in jail awaiting trial, and this time shall be fully counted for all purposes, including good time, gain time, parole, visitations, work release and all other privileges, emoluments, advantages or benefits, whether or not named or thought of herein. [Citation omitted.]"

v. Warden, *supra*. Our Legislature had provided for a sentence credit if the sentence was to the county jail, and later, in 1971, extended this credit to state prison sentences. A similar situation arose in California. In In re Young, 32 Cal.App.3d 68 (1973), a prisoner sought the advantage of a statute providing that pretrial or probationary jail time should be credited to a minimum prison term but expressly excepted prisoners delivered to the prison before its effective date. The court, resting its conclusion on both federal and state constitutional grounds, granted Young credit for his presentence confinement toward his minimum term (3 years), at which time he would become eligible for parole. In Thompson v. State, 496 P.2d 651, 656–657 (Alaska 1972), the court, on dictates of fairness, granted a credit for presentence confinement of a defendant financially unable to make a $2,500 bail, even though the sentencing occurred prior to the legislation granting such credit. See also Ham v. North Carolina, 471 F.2d 406 (4th Cir. 1973), and Mott v. Dail, 337 F.Supp. 731 (E.D.N.C. 1972), *appeal dismissed,* 473 F.2d 908 (4th Cir. 1973). We therefore conclude that presentence credit for those financially unable to make bail shall be retroactive.[14]

5.   *Sentence Credit Toward Parole Eligibility.*

Sentence credit applies toward the computation of the length of confinement as well as to parole eligibility. NRS 176.055 allows credit toward the duration of the sentence, "including any minimum term thereof which may be prescribed by law. . . ." Eligibility for parole is set forth in NRS 213.120, which provides:

"Except as otherwise limited by statute for certain specified offenses, a prisoner may be paroled when he has served:

"1.   One-fourth of the definite period of time for which he has been sentenced pursuant to NRS 176.033, less good time credits; or

"2.   One year,
whichever is longer."

The sentence credit given to the indigent prisoner unable to make bail shall be allowed as if he had served such confinement after the date of imposition of sentence.[15]

The California court in In re Young, *supra,* applied 62

---

[14]Credit should be allowed to all prisoners now serving a sentence of confinement, but any such available credit may not, of course, be used toward an unrelated sentence.

[15]Subsection 3 of NRS 176.335 provides that the term of imprisonment commences on the date of sentencing.

days of presentence confinement toward Young's minimum term, so that he would be eligible for parole. In White v. Gilligan, 351 F.Supp. 1012 (S.D. Ohio 1972), a three-judge federal court, in reviewing a statutory scheme that provided for a discretionary grant of sentence credit, held that, where a defendant remains in jail prior to his trial, he must be given credit on his sentence for all periods of actual confinement, saying, "This will result both in earlier parole consideration and in an earlier expiration of his maximum sentence." 351 F.Supp. at 1014.[16] Under this construction, a prisoner may be paroled after completion of one-fourth of his designated sentence minus presentence credit and good time credit, or after one year minus presentence credit, whichever of the two periods is longer. Any good time credit shall apply only to subsection 1 of NRS 213.120, permitting a prisoner to be paroled after serving one-fourth of his fixed sentence. So also the additional credits "for convicts whose diligence in labor or study merits such credits and for convicts who donate their blood for charitable purposes." See NRS 209.280(3) and NRS 209.285(3). See also NRS 209.430 for road work credit.

The State has relied rather heavily upon McGinnis v. Royster, 410 U.S. 263 (1973), as authority for the proposition that sentence credit may not be applied toward parole eligibility. However, in that case the New York Correction Law granted a sentence credit against a full period of incarceration, but the statute explicitly denied such a credit to be applied toward a minimum parole date. The New York statutory scheme differentiated and provided separate treatment of sentence credit toward a maximum term and parole eligibility. No similar statutory scheme exists in Nevada. On the contrary, NRS 176.055, *supra,* directs that credit be allowed against "any minimum term." By giving a full credit for presentence confinement, we are merely implementing the letter and spirit of the statute.

We therefore reverse and remand Anglin's case to the court below with instructions to enter an appropriate order granting Anglin 99 days' credit on his 10-year prison term.

Since the issues presented in cases numbered 7397, 7355, 7330, 7348, 7389, 7356, 7347, 7361, 7349, 7388, 7398, 7229, and 7390 relate to the issues presented in Anglin's appeal, we reverse and remand those cases to the district

---

[16]In State v. Little, 296 N.E.2d 574, 577 (Ohio App. 1973), the state court acknowledged that the federal court's ruling mandated that "dead time" be applied to parole eligibility.

courts with instructions to enter appropriate orders in each case consistent with the views set forth herein.

THOMPSON, C. J., and BATJER, and ZENOFF, JJ., concur.

GUNDERSON, J., concurring and dissenting:

I agree that if an indigent is incarcerated because he cannot post bail, in circumstances where an affluent person could have purchased pretrial freedom, our Constitution often requires that jail-time be credited against his sentence. Cf. Tate v. Short, 401 U.S. 395 (1971), and Williams v. Illinois, 399 U.S. 235 (1970). However, I do not agree that the majority opinion adequately resolves the permutations of the problem, either in the abstract or as they appear in the cases before us.