JAMES RICHARD McMICHAEL, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 9714

April 7, 1978                                                577 P.2d 398

*Horace R. Goff,* State Public Defender, and *J. Thomas Susich,* Chief Deputy Public Defender, Carson City, for Appellant.

*Robert List,* Attoney General, Carson City; and *Robert C. Manley,* District Attorney, Elko County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Elko Police were notified on September 24, 1975, by a twelve-year-old male youth that while in Lamoille Canyon, Elko County, he witnessed appellant orally copulating a young boy. An arrest warrant issued incident thereto, and on October 16, 1975, appellant was arrested in California on the warrant. Shortly thereafter on October 20, 1975, appellant was taken into custody by the FBI on a federal Dyer Act charge. On January 20, 1976, Elko authorities issued a formal request to obtain custody of appellant which was granted by the federal authorities in March, 1976.

Trial was held on February 22–23, 1977, and the judgment of conviction of one count of the infamous crime against nature, a felony, was entered on March 21, 1977.[1] This appeal followed.

Appellant raises the following issues for our consideration. (1) The trial court erred in admitting evidence of appellant's past and subsequent similar crimes and acts; (2) the trial court erred in refusing appellant's attempt to impeach a witness; (3) the trial court erred in refusing appellant's proffered jury instructions; (4) appellant was denied his constitutional right to a speedy trial; and (5) appellant was not given proper credit for time served. We turn to treat these questions.

---

[1]NRS 201.190(1)(a), as it then read, provided in part: "(1) . . . every person of full age who commits the infamous crime against nature shall be punished: (a) . : . where such offense is committed upon the person of one who is under the age of 18 years, by imprisonment in the state prison for life with possibility of parole. . . ."

## 1. *Admission of Similar Crimes.*

During respondent's case-in-chief, the court admitted into evidence testimony of the thirteen-year-old victim that he and appellant had recently engaged in similar proscribed oral copulation both prior and subsequent to the incident leading to appellant's arrest. The trial court admitted this testimony to prove intent or the absence of mistake or accident.[2] We agree.

The general rule is that proof of character to evidence particular criminal conduct is inadmissible unless and until the accused gives evidence of his good character. *McCormick on Evidence,* § 190 (2nd ed. 1972); State v. Henley, 557 P.2d 33 (Or.App. 1976); *compare,* Carter v. State, 84 Nev. 592, 446 P.2d 165 (1968). The rule prohibiting proof of prior misconduct is an application of the general rule. Such evidence is admissible only if it is relevant for some purpose other than to show the accused probably committed the crime because he is of a criminal character. *See,* Demmert v. State, 565 P.2d 155 (Alas. 1977); *see also,* Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976). NRS 48.015 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." The general rule is that when evidence is sufficiently relevant it may be admitted even though it embraces evidence of the commission of another crime. Wallin v. State, 93 Nev. 10, 558 P.2d 1143 (1977); People v. Guerrero, 548 P.2d 366 (Cal. 1976). Appellant urges error on the premise that intent or lack of mistake was not in issue. *See,* 1 *Wharton's Criminal Evidence,* 560 (13th ed. 1972). Here, we believe intent is an element of the crime with which appellant was charged (NRS 201.190; 193.190) and that his intention was put in issue by the not guilty plea.[3] Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962). In our view, the evidence tends logically and by reasonable inference to establish a fact material to the State. *Guerrero, supra.* Even this type evidence, to be relevant, should not be admitted unless the acts are similar and proximate in time.

---

[2]NRS 48.045(2) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent,* preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)

[3]NRS 193.190 provides in part: "In every crime or public offense there must exist a union, or joint operation of act and intention. . . ."

Moreover, in sex crimes generally a more liberal judicial attitude exists in admitting evidence of prior and subsequent proscribed sexual conduct. *See,* 77 ALR2d 841. Upholding in a prosecution for fellatio, case-in-chief testimony of boys other than those with whom defendant was charged with having committed the acts, the court in State v. McDaniel, 298 P.2d 798 (Ariz. 1956), said:

> Certain crimes today are recognized as stemming from a specific emotional propensity for sexual aberration. The fact that in the near past one has given way to unnatural proclivities has a direct bearing upon the ultimate issue whether in the case being tried he is guilty of a particular unnatural act of passion. The importance of establishing this fact far outweighs the prejudicial possibility that the jury might convict for general rather than specific criminality. Even granting the general rule of inadmissibility of evidence of independent crimes to prove the offense charged, many courts recognize a limited exception in the area of sex crimes to prove the nature of the accused's specific emotional propensity.

*Id.* at 802–03. *Accord,* State v. Miller, 564 P.2d 1246 (Ariz.App. 1977); State v. McFarlin, 517 P.2d 87 (Ariz. 1973); People v. Covert, 57 Cal.Rptr. 220 (App. 1967); *compare,* Allan v. State, 92 Nev. 318, 549 P.2d 1402 (1976).

Appellant contends that liberalization of the general rule of exclusion as to him results in undue prejudice because its probative value was substantially outweighed by the danger of prejudice. Here, the trial court only admitted evidence of sexual conduct between the appellant and the victim. *See,* People v. Stanley, 433 P.2d 913 (Cal. 1967); *see also,* State v. Waites, 490 P.2d 188 (Or.App. 1971); *cf.* People v. Kelley, 424 P.2d 947 (Cal. 1967). Admission of the evidence involved the trial court's discretionary determination in balancing the prejudicial effect of proffered testimony against its probative value. NRS 48.035; *see,* Brown v. State, 81 Nev. 397, 404 P.2d 428 (1965); *see also,* State v. Hampton, 529 P.2d 127 (Kan. 1974). The court concluded the probative value of the evidence outweighed the prejudicial effect. Additionally, immediately after the victim was permitted to testify concerning recent similar past and subsequent sexual acts, the trial court admonished the jury as to the limited purpose of the admitted evidence. Further, the court gave the jury a cautionary instruction to the same effect. Moreover, the court excluded evidence of alleged past sexual acts between appellant and other young boys. The

record indicates that the trial court was sensitive to the possible prejudicial effect of accumulative testimony of appellant's prior and subsequent sexual proclivities.

The high degree of relevancy, less prejudice to the accused and the general difficulty of proving such crimes are factors which have contributed to the development of this narrow exception to the general rule. *See, McFarlin, supra.* Because of the dangers of creating assumptions of guilt in the minds of the triers of fact, the risks attendant to compelling the accused to meet collateral charges and possible confusion of the issues, this exception mandates proof of similar offenses which are near in time to the principal offense and which do not apply to mere criminal propenstities in general but rather to specific sexual proclivities. The evidence should be received with extreme caution, and if its relevancy is not clear, the evidence should be excluded. *Kelley, supra;* Nester v. State of Nevada, 75 Nev. 41, 334 P.2d 524 (1959); State v. McFarlin, 41 Nev. 486, 172 P. 371 (1918). Whenever a confrontation occurs between relevancy and the general rule that protects the accused against prejudice likely to follow admission of such evidence, the trial court must, as was done in the instant case, weigh the probative value of the proffered evidence against the bias or prejudice likely to result. *See, Stanley, supra; accord,* People v. Sheets, 59 Cal.Rptr. 777 (App. 1967); State v. Hopfe, 82 N.W.2d 681 (Minn. 1957). We do not decide whether evidence of any sex offenses involving persons other than the complaining witness would be admissible. *See, McDaniel, supra;* Bracey v. United States, 142 F.2d 85 (D.C. Cir. 1944), *cert. denied,* 322 U.S. 762; 2 *Wigmore on Evidence,* § 360 (3rd ed. 1940). We note that this "emotional propensity" exception is limited to those cases involving sexual aberration, but this exception is not to the exclusion of the usual exceptions to the exclusionary rule. *Miller, supra.*

In the instant case, we find no abuse in the admission of the testimony, Martin v. State, 80 Nev. 307, 393 P.2d 141 (1964); State v. Nystedt, 79 Nev. 24, 377 P.2d 929 (1963), since the acts were similar, were committed within a period immediately preceding and following the instant offense, and involved sexual aberration.

2. *Attempt to Impeach Witness.*

Appellant next contends error in the trial court's refusal to permit him to impeach a prosecution witness for bias.

Although the record is vague, it appears appellant was attempting to show bias since appellant had testified for the prosecution in a federal court against a relative of the witness. On objection, the court rejected such evidence as irrelevant.

We have held that great latitude in cross-examination is allowed to test a witness's motives, interests, animus, accuracy, and veracity. Lloyd v. State, 85 Nev. 576, 460 P.2d 111 (1969), *cert. denied,* 398 U.S. 932; State v. Boyle, 49 Nev. 386, 248 P. 48 (1926). In State v. Fitch, 65 Nev. 668, 200 P.2d 991 (1948), this Court conceded that a cross-examiner would be entitled to impeach any witness for bias or interest which may tend to color his testimony. Rejecting appellant's contention of error, however, we stated that impeachment for bias must be controlled by the sound discretion of the trial court. On this record, we will presume that the trial court reasonably exercised its discretion in excluding the evidence.

3. *Proffered Jury Instructions.*

Appellant contends error in the trial court's refusal to give certain jury instructions. The proffered jury instructions dealt with the crime of lewdness with a child and provided that such crime was necessarily included as a lesser crime within the infamous crime against nature with which appellant was charged.

In support of this argument, appellant cites State v. Wall, 248 P.2d 222 (Idaho 1952), which held that lewd and lascivious conduct is a necessarily included crime within the infamous crime against nature. The Idaho statute, however, is distinguishable from the Nevada statute in that the Nevada law expressly excepts from the crime of lewd and lascivious conduct with a child the acts constituting the infamous crime against nature. NRS 201.230 pertaining to lewdness with a child under 14 years of age states that the crime is committed by "[a]ny person who shall willfully and lewdly commit any lewd or lascivious act, *other than acts constituting the . . . infamous crime against nature,* upon or with the body . . . of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such peson or of such child. . . . " (Emphasis added.) In Nevada, by definition the acts constituting the infamous crime against nature do not imply the criminal commission of lewdness with a child. Such crime must be proved by other acts not amounting to the infamous crime, and none was proven or, indeed, even suggested. The only evidence adduced was actual

penetration, and this act constitutes the infamous crime against nature.[4]

Appellant suggests that lewd and lascivious conduct could be inferred from the mere circumstance of sexual penetration. We do not agree. The test announced by this Court to determine whether a crime is necessarily included in the offense charged is "whether the offense charged cannot be committed without committing the lesser offense." Lisby v. State, 82 Nev. 183, 187, 414 P.2d 592, 594 (1966). In the instant case, there is no evidence to indicate that any lewd or lascivious acts were performed prior to actual sexual penetration. Such acts are not, by the Lisby test, necessarily included lesser crimes within the infamous crime against nature. None of the proffered instructions was justified by the evidence.

4. *Denial of Speedy Trial.* ·

Appellant contends that he was neither timely brought before a magistrate (NRS 171.174) nor given a speedy trial, basing the former contention upon the fact that he was arrested in California on October 16, 1975, upon the Nevada warrant, but that he remained in a California jail until October 20, 1975, at which time he was placed in federal custody to face the federal charge. McMichael argues that while he was in jail from October 16 to October 19, it was incumbent upon respondent to bring him before a magistrate. This contention is wholly without merit.

Appellant was detained only three days in a California jail on the Nevada charge until federal jurisdiction attached, at which time he was charged with violations of federal law and placed in federal custody. The claimed delay was minimal and in no way caused by the State. Furthermore, appellant demonstrates no prejudice. See, United States v. Bandy, 421 F.2d 646 (8th Cir. 1970); cf. Tellis v. Sheriff, 85 Nev. 557, 459 P.2d 364 (1969). The proscription in NRS 171.178(1) against "unnecessary delay" in bringing an arrested person before a magistrate was not violated. Tellis, supra; Brown v. Justice's Court, 83 Nev. 272, 428 P.2d 376 (1967).

Similarly without merit is appellant's claim that his incarceration from the arrest on October 16, 1975, to the Nevada arraignment on March 26, 1976, denied him his right to a

---

[4]NRS 201.193 provides: "Any sexual penetration, however slight, is sufficient to complete the crime against nature."

speedy trial. From October 20, 1975, to March 24, 1976, appellant was in a federal correctional facility. Appellant relies on Smith v. Hooey, 393 U.S. 374 (1969), as authority that the state must nevertheless bring to trial an individual incarcerated in a federal prison. That case is distinguishable from the instant case. There, the federal prisoner made repeated unsuccessful demands to be tried by the state. In the instant case, appellant made no such demand and was in fact substantially responsible for any claimed delay. Respondent nevertheless requested his release from federal custody pursuant to the Agreement on Detainers in order that appellant could stand trial on the state charge. Thus the State fulfilled its obligation to give appellant a speedy trial.

5. *Credit for Time Served.*

Appellant contends that he was not given proper credit for his presentence time served in jail. The trial court gave appellant 374 days credit for jail time served from October 16, 1975, though October 20, 1975, and from March 24, 1976, through March 31, 1977. Appellant claims, however, that he is entitled to credit against his state sentence for time served in federal incarceration on federal charges.

Appellant premises his claim on Anglin v. State, 90 Nev. 287, 525 P.2d 34 (1974), which held that an accused who remains in custody because of his inability to post a bond must be credited with the time served during such confinement. Appellant contends that he was unable to post bond to secure his release on bail and therefore remained continuously in custody since his arrest. He distinguishes his predicament from that of the defendant in Dearing v. State, 90 Nev. 297, 525 P.2d 601 (1974), who after having been arrested and subsequently released on bail was rearrested for a foreign parole violation. The *Dearing* court denied credit on the first charge for time served pursuant to the second unrelated arrest because the subsequent confinement was, in the exempting language of NRS 176.055, "pursuant to a judgment of conviction for another offense." *Id.* at 298, 525 P.2d at 601.

NRS 176.055 expressly exempts credit for time served "pursuant to a judgment of conviction for another offense." Appellant argues that his situation is more akin to *Anglin* where the defendant was given credit for confinement because of his inability to post bond rather than to *Dearing* where the defendant was released on bail, rearrested, and then not given credit because no bail had been set on the second charge and because the statutory exemption applied as the second confinement was pursuant to a different judgment of conviction. The argument is not persuasive. Here, unlike the defendant in *Anglin,* appellant was immediately arrested on the federal charge.

Our statute cannot be interpreted to grant our judiciary the right to give credit for time spent in federal custody for non-state purposes. Only incarceration pursuant to a charge for which sentence is ultimately imposed can be credited against that sentence. *See, Anglin, supra; Dearing, supra.*

The assignments of error being without merit, the judgment of conviction is affirmed.

BATJER, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.