ROGER WILLIAMS *vs.* JOSEPH D. ALTRUDA.

APRIL 21, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

48

CAPOTOSTO, J. This action in trespass against the defendant, a police officer of the city of Providence, was tried to a jury in the superior court and resulted in a general verdict for the plaintiff in the sum of $1000. Defendant's motion for a new trial was heard and denied. Broadly speaking, his exceptions before us claim error in the denial of a motion for a continuance, which he made immediately before going to trial, on the ground that there was then public excitement and prejudice against the police as a result of certain newspaper articles; in the admission of certain photographs and X-ray films; in the admission of evidence relating to plaintiff's loss of wages, such loss not being specifically alleged in the declaration; and in the denial of his motion for a new trial.

The damages in the writ are laid at $10,000. The declaration is in three counts, namely, assault and battery, false imprisonment, and violation of public laws 1941, chapter 982, governing arrests in this state. In each count the plaintiff claimed "compensatory" and punitive damages. Defendant pleaded the general issue and also a special plea of justification. Plaintiff's replication closed the pleadings.

It appears in evidence that at the time of the occurrence under consideration the plaintiff was employed by the Providence Journal Company, which publishes a daily newspaper. At about ten o'clock in the evening of September 20, 1946, a police officer arrested a member of the armed forces on Exchange Place, commonly known as the "Mall," in this city. This caused a crowd to gather, which rapidly increased in number and soon became unruly to such an extent that additional police officers were sent to the scene for the purpose of preserving order. The plaintiff was in the crowd taking pictures that might be of use to his employer. From this point on the evidence was conflicting.

The evidence for the plaintiff was in substance that, while standing some thirty-five feet from the crowd and about to take a picture, a police sergeant, without any warning whatever, grabbed and swung him over to the defendant, who, taking hold of plaintiff's arm, "whisked" him across the Mall to a "police cruiser car," hereinafter referred to merely as the car, which was parked some distance away. At the time, the plaintiff had a photographer's flash bulb pouch slung at his side and was carrying a camera in his hand. There was only one door on each side of the car, which door, being hinged from the front, opened in that direction. What took place at the car when the plaintiff was ordered to enter it from its right side rests entirely on the testimony of the plaintiff, the defendant, and the police officer who drove the car.

The testimony of the plaintiff was that as he started to get into the car, holding the camera with one hand and the flashlight gun attached to the camera with the other, the defendant violently pushed him into the car, causing him to fall on his back on the floor and against the rear seat; that, after shooting a picture from that position, he got up onto the seat; and that he was then taken to the police station, where he was held for a short time and released.

The police sergeant testified that before he took hold of

the plaintiff at the scene of the disturbance he twice asked him to move, and that it was only upon plaintiff's refusal to do so that he turned him over to the defendant. As to what happened at the car, the defendant testified that he opened the door and ordered the plaintiff to get in. Meanwhile, the driver of the car did not move from his position at the wheel and the back of the seat to his right was held so as to permit ready access to the rear of the car. The defendant denied that he pushed the plaintiff, or that the latter fell onto the floor of the car as the result of any force used by him. His testimony was to the effect that, in obedience to his order, the plaintiff quietly entered the car and sat on its rear seat. The defendant was supported by the driver only in certain respects. The latter testified fully as to what he did to provide access to the rear of the car, but he either did not see or failed to remember what happened while the plaintiff was getting in.

As to the evidence respecting plaintiff's injury and damages, it appears that he had a congenital malformation of the spine that predisposed his back to injury. Furthermore, while serving with the armed forces in England, he met with an accident in which he injured his back. He was then hospitalized in a cast for many months and thereafter wore a back brace for a considerable time following his discharge from the service for disability in October 1944. He was not wearing a brace at the time of the occurrence under consideration. It also appears in evidence that the plaintiff was involved in one or two minor accidents in this country, which according to him did not affect the condition of his back.

The plaintiff testified that, while in the police station, he began to feel pain in his back of the kind that he had previously experienced in the army; that, when released, he was unable to walk and had to be taken to his destination in an automobile; that he was obliged to resume wearing the back brace the following morning and has continued to do so ever since, especially when working; that he was

being treated by the veterans administration for his back condition and by his own physician for the other physical ailments resulting therefrom, such as nervousness and inability to sleep.   Plaintiff further testified that he felt pain in his back on sitting down and when walking up or down stairs, and that because of the present condition of his back he was unable to move quickly.   He claims damages for a lighting up and aggravation of his back condition, loss of earnings, expenses and pain and suffering.

Defendant's exception numbered 1 is to the denial of his motion for a continuance on the ground that the publication of certain articles in newspapers of wide circulation concerning the alleged serious, improper conduct of a group of police officers of this city, among whom was the defendant, had so aroused public interest and prejudice against the police generally that it was impossible for him to secure a fair and impartial trial.   This claim was not supported by any proof or offer of proof, but rested solely on the opinion of defendant's counsel who merely stated that he had the newspapers in his possession.   In the circumstances the trial justice denied the motion.   Furthermore, the defendant did not avail himself of the provisions of general laws 1938, chapter 506, §35, and move that each juror be examined on oath to ascertain whether, as a result of newspaper articles, the juror entertained any prejudice against the police in general and the defendant in particular.   As a matter of fact, after a jury apparently satisfactory to the defendant was drawn, the trial justice, on his own motion and before the jury was sworn in, made inquiry to that effect.

The burden of proof is on the party moving for a continuance.   Ordinarily the granting or denial of such a motion is within the discretion of the trial court and its action will not be reversed unless there is a clear abuse of discretion.   *Anthony* v. *Anthony & Cowell Co.,* 40 R. I. 1; *Wolfe* v. *Wolfe,* 104 A. (R.I.) 689.   The view expressed in these cases is in accord with the great weight of authority.

See 86 A.L.R. 1249 Anno. An examination of the record before us does not disclose by competent proof that there was prevailing in the community such prejudice against the defendant or the police generally as should have moved the trial court to grant a continuance on the ground that the case could not then be tried by a fair and impartial jury. On the evidence here the trial court did not abuse its discretion in denying defendant's motion for a continuance. This exception is overruled.

Under exceptions 10 to 17 inclusive, the defendant contends that it was error to admit two photographs showing the plaintiff wearing his back brace. He rests this contention on two grounds: first, that the photographs were immaterial and therefore not competent evidence; and, secondly, that no proper foundation was laid for their introduction. We find no merit in either of these grounds. The photographs were competent under plaintiff's version of the occurrence. If as a result of defendant's conduct it became necessary for the plaintiff to resume wearing a back brace and he was actually wearing such a brace at the time of the trial, an authenticated photograph thereof was competent evidence for the jury to consider if they reached the question of damages.

The defendant insists that the photographs were not properly authenticated and states in his brief that an examination of the transcript reveals "no testimony whatsoever * * * as to the accuracy, genuineness or correctness of the photograph of this brace * * *." This statement is a manifest exaggeration, as the plaintiff positively testified that the photographs were taken at his direction; that the negatives were developed and the prints therefrom made either personally or under his supervision; and that the photographs were a correct representation of the brace that he was then obliged to wear.

Defendant's complaint on this point apparently is that, even though the plaintiff had skill as a photographer, the photographs were inadmissible because the person who

actually took them was not called as a witness. While it is ordinarily desirable that such person, if available, be produced as a witness, nevertheless his absence does not affect the admissibility of a photograph if its accuracy and correctness can be otherwise established. There is no set rule respecting the authentication of photographs applicable to all cases. In this matter much must be left to the discretion of the trial court. *McKarren* v. *Boston & Northern Street Ry.*, 194 Mass. 179; *Brownlie* v. *Brownlie*, 357 Ill. 117. 3 Wigmore on Evidence (3d ed.), §794; 20 Am. Jur., Evidence, §730. The cases of *Souza* v. *United Electric Rys.*, 52 R. I. 412, and *Owens* v. *Hagenbeck-Wallace Shows Co.*, 58 R. I. 162, upon which the defendant relies, are clearly inapplicable. In the *Souza* case the question of authentication of a photograph was not raised or considered; and in the *Owens* case there was no authentication whatever of the *moving picture* that was offered in evidence. Defendant's exceptions 10 to 17 inclusive are overruled.

The same grounds of objection that we have just considered are urged by the defendant, under exceptions 22 to 32, both inclusive, and 39 and 40, to the admission in evidence of certain X-ray films of the plaintiff's lower spine and surrounding area. Defendant first contends that the X-ray films, hereinafter called films, were not sufficiently authenticated. We agree with the defendant that a film requires a higher degree of authentication than a photograph. It is not uncommon for persons without special training or skill to take photographs that are good representations of persons, scenes and other things. This is not so with films, which can be taken and, in most instances, accurately read only by experts in that field.

The defendant argues that before a film can be admitted in evidence it must be authenticated in accordance with the requirements itemized on pages 722 *et seq.* of Scott on Photographic Evidence. However, in reading that text the defendant failed to note that the writer was then considering the requirements technically necessary for the com-

plete authentication of a film; and that, immediately preceding the language quoted by the defendant, the text says that it is not unusual for films to be admitted without satisfying one or more of the requirements that follow. Further, at page 730, Scott clearly says that while certain requirements are theoretically necessary to authenticate a film, "few decisions have indicated that a complete verification is compulsory."

In ruling on the admission of films, as in the case of ordinary photographs, the trial court has reasonable latitude for the exercise of discretion. Generally speaking, a film is sufficiently authenticated for admission if there is evidence showing that it was taken by a properly qualified expert, that is, one who is familiar with X-ray techniques and procedures, and that the film is a true representation of what it purports to represent. *Wosoba* v. *Kenyon,* 215 Iowa 226; *Griffith* v. *American Coal Co.,* 75 W. Va. 686; *Kimball* v. *Northern Electric Co.,* 159 Cal. 225. Scott Photo. Evid., §§799, 800, 801, and cases cited. The defendant, quoting certain language of the court, relies on *Lake Shore Power Co.* v. *Meyer,* 51 Ohio App. 534, and *Stevens* v. *Illinois Central R.R.,* 306 Ill. 370. When the proof as to authentication in those cases is examined, we can readily see why the court held that the films were improperly admitted in evidence. Without going into details, the films there were admitted by the trial court almost without any proof of authentication.

In the instant case Dr. James F. Boyd and Dr. Jacob S. Kelley, both X-ray specialists, testified that the films in question were taken at their direction and under their supervision. They related in detail many particulars in connection with the taking of the films, such as the different positions of the plaintiff's body and of the X-ray machine, and they ended their testimony on this point by stating positively that the films were true representations of the plaintiff's back and spine. This constituted ample authenti-

cation of the films under any authority that has come to our attention.

The defendant next contends that the films were immaterial, as the condition shown by them was a pre-existing one unrelated to the alleged assault. The plaintiff offered the films to prove that, at the time of the occurrence under consideration, the congenital condition of his back, which had been intensified by his accident in the armed forces, predisposed him to injury. In a case like the one at bar the wrongdoer is legally liable in damages for whatever aggravation of an existing disability is the natural and probable result of his wrongful act. See *Golden* v. *R. L. Greene Paper Co.*, 44 R. I. 231; *Neff* v. *City of Cameron*, 213 Mo. 350; *Louisville, New Albany & Chicago Ry.* v. *Snyder*, 117 Ind. 435. 25 Am. Jur., Highways, §189.

In the circumstances of the instant case the plaintiff was entitled to introduce proof of his physical disability at the time of the occurrence, whether he did so orally or by the use of films, or both. The films having been sufficiently authenticated and being material on the question of damages were properly admitted in evidence. Exceptions 22 to 32, both inclusive, and 39 and 40 are overruled.

In connection with the preceding exceptions the defendant further urges, under exception 34, that it was error to permit the use of an X-ray viewer, so called, an appliance that illuminates a film so that its description by one qualified to interpret it may be more readily explained to and understood by lay persons, such as the jury. We find no merit in this exception. If a film is otherwise competent and a scientific explanation can be made more understandable by ocular demonstration, in our judgment there is no reason to deprive the jury of such assistance. *Chesapeake & Ohio Ry.* v. *Kornhoff*, 167 Ky. 353. This exception is overruled.

Under exception 20 the defendant contends that, since the declaration in the instant case contained no allegation of loss of wages, it was error to admit evidence of such

loss. In substance and effect the declaration now before us is the same as that in *Whitlock* v. *Mungiven,* 36 R. I. 386, where the precise question here urged by the defendant was considered by this court. That case clearly held that loss of wages is an element of special damages in an action for assault and battery, and that such loss must be alleged in the declaration, at least in a general way; otherwise no recovery can be had therefor. The reasons for this holding were fully stated in that opinion and therefore need not be repeated here.

It is argued that the declaration under consideration differs from the one in the *Whitlock* case in that the one here makes claim for "compensatory" damages. In our judgment the use of this additional term is of no assistance to the plaintiff in supplying an omitted allegation of special damages. The word "compensatory" in the present declaration is so uncertain in its scope that it fails reasonably to inform the defendant of the nature and extent of the special damages that the plaintiff intended to prove. In its legal effect under our practice this amounts to no more than an allegation of general damages, that is, damages that the law holds as the necessary result of the cause of action set forth in the declaration. Loss of wages was not a necessary result of defendant's alleged wrongful act.

In the absence of any claim in the declaration for such special damages, the plaintiff derives no advantage from the fact that his bill of particulars included an item for that loss. In *Frost* v. *International Rubber Co.,* 37 R. I. 476, at page 478, this court said that the only purpose of a bill of particulars is "to explain or make more definite the plaintiff's declaration and inform the defendant more specifically as to its extent and scope, thus enabling him to meet its charges free from the danger of surprise." A loss that is not a necessary result of the act complained of and that is not alleged in the declaration as an element of special damages cannot be injected into the case by way of a bill

of particulars and thus lay a basis for the recovery of damages for such loss.

Since the evidence that was erroneously admitted was in the definite sum of $105 and only affected the amount of the damages, it does not follow that the defendant is entitled as of right to a new trial on all issues because of that error. Although the amount of plaintiff's loss of wages was inadmissible in the circumstances, yet his absence from his ordinary employment, if due to the defendant's wrongful act, was of probative force in determining the extent of the injury sustained by the plaintiff as the result of that act. Therefore we are of the opinion that the verdict as approved by the trial justice is too large by that amount. Exception 20 is sustained.

Defendant's exception 59 is to the denial of his motion for a new trial, which motion was based on the usual grounds and on the further ground that he had not received a fair trial because of alleged public feeling against the police. The decision of the trial justice covered all these grounds in express terms or by clear implication. A close examination of his decision shows that he came to the following basic conclusions on his independent consideration of the evidence: first, the defendant had received a fair trial; second, the plaintiff's arrest was lawful; and, third, the plaintiff was injured as the result of the use of unnecessary force by the defendant. The first and second of these conclusions are amply supported by the record before us and therefore require no further discussion.

Plaintiff's right to recover in the circumstances of this case rests on whether or not the defendant used unnecessary force at the car. The evidence on this point was conflicting and the trial justice, who had the opportunity of hearing and seeing the witnesses while testifying, decided this issue adversely to the defendant.

We find no merit in defendant's contention that the trial justice failed to review the evidence and to pass on the credibility of the witnesses. In our judgment he did not

overlook or misconstrue the material evidence. His decision first reviews in general language the various incidents in connection with plaintiff's arrest and then specifically considers the occurrence at the car. Here he plainly shows that he did not believe the evidence for the defendant, saying that the driver of the car "knew more than he testified, and that leads the Court to believe Williams' story, that Williams was pushed in. that car and was hurt as he fell." Since the evidence was conflicting and reasonably open to different conclusions we cannot say that he was clearly wrong in denying defendant's motion for a new trial. Exception 59 is overruled.

The defendant's exceptions not herein considered have been examined and found to be without merit. The exceptions not briefed or argued are deemed to be waived.

The defendant's exception 20 is sustained, and the case is remitted to the superior court for a new trial on all issues unless the plaintiff shall, on or before May 5, 1948, file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $895. If such remittitur is filed, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

*Edwards & Angell, William H. Edwards, Gerald W. Harrington, John V. Kean,* for plaintiff.

*William E. McCabe,* City Solicitor, *James J. Corrigan,* Ass't City Solicitor, for defendant.