[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This is an appeal from a decision of the Zoning Board of Exeter, addressing appeals of three objectors from a written decision of the Exeter Zoning Inspector. Jurisdiction is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth herein, this Court affirms the decision below, finding the business use of the subject property to be an illegal, nonconforming use.
 Facts and Travel
The property at issue, located at 1557 Ten Rod Road in Exeter, is owned by the Appellant, Peter Contardo. The parcel is more specifically described as Assessor's Plat 32, Block 2, Lot 6, and is zoned CR-5 (Conservation/Recreation). Prior to Mr. Contardo's purchase, an individual named Barry Vaill owned the property. Mr. Vaill's ownership preceded enactment of Exeter's first comprehensive zoning ordinance in 1977, and lasted until it was sold to Mr. Contardo at a foreclosure sale in 2001.
At issue in these proceedings is the operation of a commercial enterprise on the property known as the "Christmas House." The Christmas House consists of a retail business located in the property's main building where seasonal merchandise is sold year round, and a Christmas village comprised of several outbuildings. An abutting neighbor, Appellee Brenda Shakoori, submitted a written complaint to Paul Picerne, the Exeter Zoning Inspector, alleging the Christmas House operation did not conform to zoning regulations. Responding to Ms. Shakoori's request, Mr. Picerne issued a written decision on June 20, 2002, pursuant to his authority under R.I.G.L. 1956 § 45-24-54. In that written decision, the Zoning Inspector determined the present use of the property as a retail business constituted "a pre-existing, non-conforming use which was never abandoned."
Appellees Brenda Shakoori, Masoud Shakoori and William Haas, abutting neighbors, timely appealed the decision to the Exeter Zoning Board, sitting as the Zoning Board of Appeals. The Board received testimony and evidence at hearings held on August 21 and September 24, 2002. In a written decision dated November 8, 2002, the Board reversed Mr. Picerne's decision, concluding that use of the subject property and its improvements as the Christmas House commercial retail business was not permitted either as a legally permitted use or a legal nonconforming use. Mr. Contardo subsequently filed this timely appeal.
 STANDARD OF REVIEW
This Court's review of the Zoning Board's decision is governed by G.L. 1956 § 45-24-69(D) which provides that:
 [t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 1. In violation of constitutional, statutory, or ordinance provisions;
 2. In excess of the authority granted to the zoning board of review by statute or ordinance;
 3. Made upon unlawful procedure;
 4. Affected by other error of law;
 5. Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 6. Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a zoning board decision, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v.Zoning Board of Review of Newport, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Board of Warwick, 122 R.I. 241,245; 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi,120 R.I. 501, 508; 388 A.2d 821, 824-25 (1978)). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Association v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association ofFirefighters, AFL-CIO, Local 1589, 119 R.I. 506, 508;380 A.2d 521, 522 (1977)). This Court should exercise restraint in substituting its judgment for the Zoning Board and is compelled to uphold the Zoning Board's decision if the court conscientiously finds that the decision is supported by substantial evidence contained in the record. Mendonsa v.Corey, 495 A.2d 257, 260 (R.I. 1985) (citing Apostolou,120 R.I. at 507; 388 A.2d at 825).
 ANALYSIS
Decision of the Board
In the written decision issued on November 8, 2002, reviewing the Zoning Inspector's determination of a preexisting legal non-conforming use, the Board outlined its conclusions and the findings of fact relied upon in support thereof. Most significant to the Board's decision was evidence concerning the commercial history of the property. After considering the evidence and testimony presented, the Board found the following:
Prior to enactment of the Zoning Ordinance in 1977,[1]
Mr. Vaill lived on the property and also operated a small craft/gift shop there. Known as "Ginger Snap Station," that business consisted of painting figurines in the basement and selling them out of the garage during the Christmas season. No evidence indicated that any part of the property other than the garage and basement were used for the business known as Ginger Snap Station at any time. Mr. Vaill ceased to reside on the property in 1985, and there is no evidence that anyone resided on the property thereafter. Mr. Vaill established the Christmas House business in 1985. The business use of the property utilizes the entire building, including several outbuildings used as a Christmas village and a gazebo. The main building has no kitchen or bedroom doors, and has shelves throughout. No Zoning Board relief, permits, or other approvals were granted by the Board for the property.
Several times during this period the Town of Exeter and its instrumentalities had occasion to consider the use of the property. In 1988 a zoning certificate and building permit were issued to Mr. Vaill to construct a 30 x 60 foot addition on the property for storage and a workshop, which he subsequently constructed. In December 1989 the Town Council addressed complaints concerning parking, traffic, and the operation of a commercial business in a residential zone involving the subject property. In that instance, the Town Council voted to have Mr. Vaill correct infractions and proceed through appropriate channels before enlarging the business or making any other changes. The Town Council also sought the advice of the Town Solicitor in that matter. In January 1989, he advised them that their December 1989 instructions were appropriate, and that "absent a clear and present danger to the public health and safety, any attempt to restrict or abate the present use would be inappropriate." In December 1989, the Zoning Inspector issued a certificate to Mr. Vaill, indicating the parking lot on the property conformed to the Zoning Ordinance.
The Board considered this history at hearing, concluding commercial retail business use of the property, specifically operation of the Christmas House, is not permitted either as a legally permitted use or a legally nonconforming use. The Board reasoned the particular business use of the basement and garage of the property as the Ginger Snap Station in 1977 "may have been a legally permitted use as a home occupation" because Mr. Vaill resided on the property. The subsequent use of the property to operate the Christmas House, however, was not a home occupation as no person resided therein since 1985.
Alternatively, the Board reasoned, even if the Ginger Snap Station business were not considered a legally permitted home occupation, the business use of the property would be legally nonconforming only to the extent it existed prior to enactment of the Zoning Ordinance in 1977. Subsequent enlargement, expansion, and intensification, would be illegal because no Board approval was ever obtained.
 Discussion
Refusal to Grant Continuance
The first argument raised by Mr. Contardo is that the Exeter Zoning Board clearly abused its discretion in denying his request for a continuance. That continuance, he maintains, was appropriate, indeed necessary, on two grounds. First, he argues, all parties acknowledged the central importance of Mr. Vaill's testimony in establishing the legality of its prior use. Next, he maintains the importance of completing his own testimony was similarly acknowledged. Accordingly, he argues his requests for a continuance, first to locate Mr. Vaill, and next to attend to his mother's deathbed on the hearing night, were improperly denied.
In response, Exeter contends the Board acted within its discretion. Exeter recites the two grounds for the requested continuance, allowing Mr. Contardo opportunity to complete his testimony and locate Mr. Vaill, vigorously contesting the notion that the Board denied Mr. Contardo fair opportunity to locate a potential fact or witness or offer his own testimony. Exeter contends Mr. Contardo had ample time to locate Mr. Vaill, and his further testimony as to the present use of the property was unnecessary for the Board's determination of a preexisting use.
"The granting or denial of [a continuance] is within the discretion of the trial court and will not be reversed unless there is a clear abuse of discretion." Kishfy v. Kishfy,104 R.I. 61, 65-66; 241 A.2d 827, 829 (1968) (citing D'Acchioli v.Cairo, 87 R.I. 345, 349; 141 A.2d 269, 271 (1958)). The burden of proving that the denial of a motion for a continuance will constitute prejudicial error is on the party moving for a continuance. Id. (citing Williams v. Altruda, 74 R.I. 47, 52;58 A.2d 562, 565 (1948)).
Mr. Contardo had 56 days to locate Mr. Vaill. He had public notice on July 18, 2003 of the Zoning Inspector's written decision determining the Christmas House business constituted a pre-existing, non-conforming use which was never abandoned. Mr. Vaill, owner of the property at the time Exeter enacted its Zoning Ordinance in 1977, was the most logical witness to testify to the property's prior use. However, Mr. Contardo's attorney testified his efforts to locate Mr. Vaill commenced only after the first hearing, more than a month after notice of the appeal. This Court views the 56 day time period here as reasonable. Further, as Exeter notes, Mr. Contardo could make no prediction as to the likelihood of locating Mr. Vaill, nor did he make an offer of proof as to the substance of his testimony. Accordingly, this Court concludes the Board did not abuse its discretion by denying Mr. Contardo's motion for a continuance on this ground.[2]
Neither did the Board abuse its discretion by refusing to continue the hearing to allow further testimony from Mr. Contardo. Mr. Contardo testified extensively at the previous hearing regarding the use of the property immediately prior to his ownership. The continuance sought by his attorney was to allow him the opportunity to testify as to the present use of the property. The present use, however, was undisputed. It is evidence of the property's business use prior to 1977 which the Board sought, and which Mr. Contardo concedes his testimony cannot illuminate. Accordingly, this Court concludes the Board did not abuse its discretion by denying Mr. Contardo's motion for a continuance on this ground.
Evidentiary Rulings of the Board
The second issue raised by Mr. Contardo concerns two evidentiary rulings made by the board. Mr. Contardo first maintains the Board erred in refusing to allow him to introduce field cards from the Exeter Tax Assessor which indicated the property was taxed as commercial property during the time in question. He reasons these cards should have been admitted to demonstrate commercial use, especially in light of Mr. Vaill's continued absence. The second evidentiary ruling Mr. Contardo contests concerns the Board's refusal to allow the Zoning Inspector to read a letter from the Building Inspector to establish legally nonconforming use. He argues the Board improperly excluded the letter as hearsay.
The procedures set out in the General Laws for conducting administrative proceedings determine the rule of competency applicable here. Specifically, G.L. 1956 § 42-35-10(a) mandates "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded" in contested administrative hearings. Id. SeeDePasquale v. Harrington, 599 A.2d 314, 315 (R.I. 1991). The hearing transcript reveals that the field cards Mr. Contardo sought to introduce extended back to 1992. However, commercial use of the property in 1992 is undisputed. The issue of fact being investigated by the Board was the commercial use of the property as of 1977. The field cards have no relevance to such determination, and were therefore properly excluded.
The letter the Zoning Inspector sought to read into the record was an unsigned, undated document from the Building Inspector who was not present. When the Zoning Inspector offered the letter to attest to the nonconforming use of the property, the Town Solicitor advised the Board that they could not base a finding of a legally nonconforming use on hearsay, and the Board declined to receive the letter into evidence. Exeter argues that advice reflected the Rhode Island Supreme Court's holding that the "burden [of proving a legally nonconforming use]cannot be sustained by hearsay or unsworn testimony or when the evidence of such alleged prior use is contradictory." Rico Corp. v. Exeter,787 A.2d 1136, 1144 (R.I. 2001). The Rico Court explained that the reason for imposing such a heavy burden of proof to establish the existence of a nonconforming use is because "[n]onconforming uses are necessarily inconsistent with the land-use pattern established by an existing zoning scheme." Id.
(citing Toys "R" Us v. Silva, 89 N.Y.2d 411, 654 N.Y.S.2d 100,676 N.E.2d 862, 865 (1996)). In this instance, the letter was never authenticated. Accordingly, this Court concludes the Board acted appropriately when it declined to accept the Building Inspector's letter as evidence.
Jurisdiction to Determine Validity of Nonconforming Use
Mr. Contardo next argues the Exeter Zoning Board lacks jurisdiction to determine the validity of the non-conforming use on his land. Specifically, Mr. Contardo cites Rico Corp. v.Exeter, 787 A.2d 1136 (R.I. 2001), for the proposition that the Board has no jurisdiction to decide that a nonconforming use did not exist. Instead, he argues, the alleged nonconforming use constituted an issue fact to be determined after a full evidentiary and fact intensive inquiry at trial before the Superior Court. Exeter argues Mr. Contardo's proposition that the Board lacks jurisdiction to determine legally nonconforming uses mischaracterizes the Court's holding in Rico. Instead, Exeter contends, the language cited by Mr. Contardo indicates not that the Board is without jurisdiction to make such determinations, but rather those determinations are without res judicata effect precluding judicial review.
Mr. Contardo's contention that the Board lacked jurisdiction to determine existence or absence of a legally nonconforming use is unavailing. Exeter's argument is compelling. The Court in Rico
described the jurisdiction of zoning boards with specificity. "[They] are statutory bodies. Their powers are legislatively delineated. They are empowered to hear appeals from the determinations of administrative officers made in the enforcement of the zoning laws . . ." Rico Corp. v. Town of Exeter,787 A.2d 1136, 1144 (R.I. 2001) (citing Olean v. Zoning Board ofReview of Lincoln, 101 R.I. 50, 52, 220 A.2d 177,178 (1966)). In the instant case the Board heard appeals from a determination of the Zoning Inspector made in the course of enforcing the zoning laws. Accordingly, the Board acted pursuant to its jurisdiction in hearing the appeal and issuing its decision.
Determination of Illegal Use
Mr. Contardo next maintains that, even with the exclusion of certain evidence, the overwhelming weight of evidence in the record showed the Christmas House to be a valid nonconforming use. Exeter responds that the evidence presented to the Board established that prior to and after the enactment of the Exeter Zoning Ordinance on May 2, 1977 Mr. Vaill utilized the property as a legally permitted home occupation, and as such it cannot acquire legally nonconforming use status because it conformed to zoning at the time of enactment. Specifically, Exeter maintains the evidence presented showed Mr. Vaill operated the small craft shop known as Ginger Snap Station, painting figurines in the basement and selling them from the garage. Such activity, Exeter argues, constituted a ceramic or handicraft home occupation as expressly permitted by the Ordinance in 1977. The use of the property became nonconforming only in 1985, when Mr. Vaill moved out and drastically enlarged the scope of the business use.
"The burden of proving a nonconforming use is upon the person or corporation asserting the nonconforming use, and that party must prove that the use lawfully was established before the zoning restrictions were placed upon the land." Rico Corp. v.Exeter, 787 A.2d at 1144, (citing Town of Glocester v. LucyCorp., 422 A.2d 918, 920 n. 2 (R.I. 1980)). In the instant appeal, the Board held two hearings to receive testimony and evidence, and submitted a detailed, well-reasoned written decision in defense of their conclusions. The Board credited and discounted certain evidence and testimony as a Zoning Board of Appeals is commissioned to do. The Board ultimately arrived at the considered conclusion that Mr. Vaill's use of the property prior to enactment of Exeter's Zoning Ordinance did not constitute a nonconforming use. This Court is compelled to uphold the Zoning Board's decision if it conscientiously finds that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985) (citing Apostolou, 120 R.I. at 507; 388 A.2d at 825). Because substantial evidence in the record supports the Board's decision, this Court declines to disturb the Board's determination that no legally nonconforming use exists.
Equitable Defenses
Finally, Mr. Contardo argues the application of three equitable doctrines, estoppel, waiver, and laches, operate to bar Exeter from closing down the business.
Mr. Contardo first argues Exeter is estopped from closing the Christmas House business because he relied on the Zoning Inspector's written determination that the business constituted a preexisting nonconforming use. Notwithstanding the general unavailability of equitable estoppel as a defense to a zoning enforcement action, see Almeida v. Zoning Board of Tiverton,606 A.2d 1318, 1321 (R.I. 1992), Mr. Contardo fails to plead sufficient facts to invoke equitable estoppel. Mr. Contardo specifies no action in reliance on the determination, and the Zoning Ordinance clearly notices an aggrieved party's right to appeal from a zoning official's determination. See Exeter Zoning Ordinance § 1.7. Accordingly, Exeter is not estopped from enforcing the Zoning Ordinance.
Mr. Contardo next raises the equitable doctrine of waiver. Waiver is the voluntary and intentional relinquishment of a known right. Pacheco v. Nationwide Mutual Insurance Co.,114 R.I. 575, 577, 337 A.2d 240, 242 (1975). Mr. Contardo contends Exeter intentionally relinquished any right to enforce the Zoning Ordinance in 1988 and 1989 upon the advice of the Town Solicitor. Exeter argues the Town Council's action in 1988 and 1989 constituted an ultra vires response to an informal complaint. The Zoning Enabling Act sets forth statutory procedures to address and review zoning violations. See R.I.G.L. 1956 §45-24-27 et seq. A local official, the Zoning Inspector, is responsible to investigate suspected violations. Section45-24-54. The Zoning Board of Review is empowered to hear and decide appeals of the Zoning Inspector's determinations. Section45-24-57. Objector Brenda Shakoori's letter to the Zoning Inspector, represents the first time this statutory process was invoked concerning the Christmas House Business. Exeter never intentionally relinquished its right to enforce the Zoning Ordinance. Mr. Contardo's waiver argument is therefore unavailing.
Finally, Exeter argues the doctrine of laches precludes Exeter from closing the Christmas House. Courts have found that the equitable defense of laches does not operate as a defense in public interest cases. See O'Reilly v. Town of Glocester,621 A.2d 697, 703 (R.I. 1993). This is due to:
 (1) the importance of rights at stake when the interests of the public are asserted and (2) the determination that those rights cannot be compromised or forfeited by the negligent or illegal acts of public officials who fail to carry out their governmental obligations. Id. (citing Student Public Interest Research Group of New Jersey v. P.D. Oil Chemical Storage, Inc., 627 F. Supp 1074, 1085
(D.N.J. 1986)).
The Exeter Zoning Ordinance was established for reasons of public interest, as evidenced in the language of the Zoning Enabling Act, Section 45-24-29(a)(3):
 It is therefore found that the preparation and implementation of zoning ordinances is necessary to address the findings and needs identified in this section; to protect the public health, safety, and general welfare; to allow the general assembly to carry out its duty to provide for the conservation of the natural resources of the state and to adopt all means necessary and proper by law for the preservation, regeneration, and restoration of the natural environment of the state in accordance with R.I. Const., Art. I, §§ 16 and 17; to promote good planning practice; and to provide for sustainable economic growth in the state.
Accordingly, this Court will not use laches to sanction an illegally established nonconforming use in contravention of the Zoning Ordinance.
 CONCLUSION
After a review of the entire record, this Court finds that the Board's decision is supported by substantial, reliable and probative evidence of record and is not affected by error of law. Substantial rights of the plaintiff have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit appropriate judgment and orders.
[1] The zoning designation of the subject property has remained CR-5 (Conservation/Recreation) since enactment of the Zoning Ordinance in 1977.
[2] Mr. Contardo additionally argues the Board appeared to be influenced by extraneous and prejudicial factors. Specifically, Mr. Contardo argues the presence of the objectors during the Board's discussion of the motion was prejudicial, and the Board's discussion of scheduling conflicts operated to sacrifice Mr. Contardo's rights on "the altar of convenience." While the objectors' comments to the Board may have been inflammatory, there is no showing that they were unduly prejudicial; and while Mr. Contardo objected to the Board's consideration of scheduling matters, the Court notes Mr. Contardo's own delay in trying to locate Mr.Vaill and the lack of demonstrated need for his own testimony.